[Civ. No. 18455.   First Dist., Div. Two.   June 4, 1959.]

NORMAN W. GILBERT et al., Respondents, v. CLAYTON W. CORLETT, Appellant.

Marquam C. George for Appellant.

Robert J. Cooney and Robert J. Duggan for Respondents.

O'DONNELL, J. pro tem.*—This is an action for damages for fraud perpetrated by defendant on plaintiffs in the sale of certain residence premises in the city of Berkeley. The jury returned a verdict for plaintiffs in the sum of $6,500 on which judgment was entered. Defendant appeals from the judgment.

On November 28, 1953, plaintiffs, who were in the market for a residence, looked at defendant's premises. The premises consisted of a two-story house located on a steep hillside lot in the Berkeley hills. Plaintiffs spent several hours inspecting the house. There was considerable unevenness in the floors throughout the house extending down to the foundation. Mr. Gilbert, in discussing this condition with defendant, said that he was not particularly concerned with the existing condition but that he wanted to make sure that the condition would not worsen, and that he would therefore like to have an engineer inspect the property. Defendant replied that, anticipating that such a question might be raised, he had had an engineer, Mr. Piatt, make an inspection and report. Defendant there-

*Assigned by Chairman of Judicial Council.

upon showed plaintiffs that report. The report dated November 6, 1953, stated that the house is in excellent condition, that the ground structure is good and "such movement as there may be is minor in amount and does not threaten the structural safety of the building." The report further states that ". . . when the times comes when the accumulated distortion would make repairs imperative, the cost of such repairs will be a minimum. So far as I can see this will not be required for another twenty years. . . ." The following day, November 29, 1953, plaintiffs signed a contract of sale and in January 1954, they moved into the house. About two weeks later, during a rainstorm, a crack appeared in the fireplace which gradually widened to about 2 inches. Later the house pulled away from the steps. Both chimneys in the house developed cracks. Cracks also developed in the dining room and basement.

In September of 1956, plaintiffs learned that prior to the Piatt report defendant had had another engineer's inspection and report made by one Paul A. Swafford. When asked by plaintiffs about this report defendant said he could remember no one by the name of Swafford. Later he admitted knowledge of the report. The Swafford report was based on an inspection made in April 1953. In his report, Mr. Swafford says that, "Eventually, the house will become uninhabitable and valuless [sic]." And further that, "With the present and continuing settlement the lot is of no value." Defendant was duty bound to make known to plaintiffs the contents of the Swafford report.

*Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 235 [153 P.2d 325], quotes with approval the following statement from 12 Ruling Case Law, section 71, page 310: "Even though one is under no obligation to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which will materially qualify those stated. If he speaks at all he must make a full and fair disclosure."

At the trial Mr. Gilbert testified that he would not have bought the property had he then known of the Swafford report. He also testified that he was not familiar with either the real estate business or the construction business.

Defendant contends that one of the essential elements of actionable fraud, to wit, a misrepresentation or concealment of a material fact, is absent in this case. He asserts that

the Swafford report is merely the expression of an opinion regarding the subject property and not a representation of fact. The contention is clearly without merit. While Mr. Swafford did, of course, express an opinion regarding the property, yet, it is a matter of fact and not opinion that he inspected the property and that he made a report of his inspection, and it is also a matter of fact that he gave an opinon on the condition of the property. █ This contention of defendant is best answered in the language of the Supreme Court in *French* v. *Freeman*, 191 Cal. 579 [217 P. 515], a fraud case in which the facts were essentially similar to those of the instant case. The court there said at page 586: "Furthermore, the misrepresentations of the defendant relative to the character of this land were based upon the further statement that the soil had been analyzed and that such analysis showed the land to be of the character represented, and fitted for the production of pears. And it is well established that a statement of what might otherwise be an opinion, if based on alleged facts, is a statement of fact and not a statement of an opinion."

█ The French case also disposes of defendant's further contention that plaintiffs did not rely on the Piatt report and were not misled by the concealment of the Swafford report because they made their own inspection of the property before contracting to purchase it. In the French case the court said at page 587: "It is apparent that a vendee who actually knew the character of the soil on the land which he inspected would not be heard to say that he relied upon the statements of the vendor; but where it is shown that the vendee was unacquainted with soils, the fact that he visited the land does not preclude him from saying that he relied upon the vendor's statements." As we have seen above, Mr. Gilbert was not familiar with either the real estate business or the construction business. He was sales manager for a concern that manufactured conveyor belts. Moreover, that he was unfamiliar with the qualities of soil, and that he was not relying upon his own inspection, is demonstrated by the fact that he, prior to the purchase, told defendant that he wanted an engineer's report.

Finally, defendant argues that there was no proof of damages. The purchase price of the property was $17,500. Lester G. Brown, a real estate appraiser who testified on behalf of plaintiffs and who was the only witness who testified to

value, stated that in his opinion the property had reasonable market value of $8,750 as of the date of purchase. (The jury returned a verdict of $6,500 damages.) Mr. Brown, in arriving at his valuation figure, placed a life expectancy of 10 years on the house. ■ Defendant contends that Mr. Brown was not qualified to testify as an expert on the life expectancy of houses and that therefore his opinion of the market value of the subject property must be entirely disregarded. This contention is wholly devoid of merit. Mr. Brown had been a real estate broker and appraiser for almost 20 years. He was familiar with the neighborhood. He had inspected the subject property. He had investigated sales of other property similarly situated in the slide areas of the Berkeley hills. He examined the condition of other properties similarly situated. It was upon these competent factors that he predicated his opinion of the life expectancy of the house. ■ Moreover, defendant did not, at the trial, question Mr. Brown's qualifications or object to his giving his opinion on the subject of life expectancy. Having failed to so object, defendant cannot now question his competency. (19 Cal.Jur.2d, p. 22.)

The judgment is affirmed.

Dooling, Acting P. J., and Draper, J., concurred.