Hernreich v. Lidberg.

---

### Jennie Hernreich, Adm'x, v. Tiodolf Lidberg et al.

1. SPECIFIC PERFORMANCE—*Relief is Within the Discretion of the Court.*—Relief, by way of specific performance, is a matter within the discretion of the court, and will not be granted unless the party seeking it acts as promptly as the nature of the case will permit.

2. SAME—*Of an Agreement to Organize a Corporation.*—Equity will not decree the specific performance of an agreement to organize a corporation when three of the four proposed incorporators are insolvent.

3. SAME—*Equity Will Enforce Contract in All Its Parts.*—Equity, when it takes jurisdiction to enforce the specific performance of a con-

tract, will enforce it in all its parts, and will not undertake such enforce-
ment where the contract calls for a succession of acts whose perform-
ance can not be consummated by one transaction, and which requires
protracted supervision.

4. GENERAL INCORPORATION ACT — *Intention is that Subscribers to
Capital Stock Should Be Persons of Financial Responsibility.*—The
clear intention of the incorporation act of this state is that subscribers
to the capital stock of a corporation should be persons of financial
responsibility, and a court of equity should be slow to exercise its dis-
cretion in enforcing specifically an agreement to incorporate which
provides that three-fourths of its capital stock should be subscribed by
persons who are insolvent.

**Bill for Specific Performance.**—Appeal from the Superior Court of
Cook County; the Hon. AXEL CHYTRAUS, Judge presiding. Heard in
this court at the March term, 1902. Affirmed. Opinion filed January
26, 1903.

J. G. GROSSBERG, attorney for appellant.

DANIEL W. SCANLAN, attorney for appellees; WILLIAM E.
CLOYES, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

November 26, 1900, appellant filed his bill against appel-
lees, by which he sought a decree of specific performance
of an agreement therein set out to incorporate the Con-
tinental Electric Telephone Company and to compel the
appellees Lidberg, Stitch and Davenport, to assign to said
company all their right, title and interest in certain letters
patent therein described, also for an accounting of appel-
lant's share of the receipts and profits derived by the
defendants from selling telephone transmitters under said
letters patent. Demurrers to the bill were sustained, and
it was subsequently amended and a demurrer to the bill as
amended sustained. The bill was further amended and a
supplemental bill filed, and a demurrer to the original bill as
amended, and to the supplemental bill was sustained, and
the bill dismissed for want of equity, from which order of
dismissal this appeal was taken.

It appears, in substance, from the allegations of the bill
as finally amended, the supplemental bill and exhibits made
a part of the bill, among other things not necessary to be

here stated, that about August 21, 1899, appellant made an
agreement in writing with the appellees Lidberg, Stitch
and Davenport, to form a corporation to be known as the
Continental Electric Telephone Company; that on the
opening of books of subscription they should each receive
1,250 shares, being all of the stock of the corporation, each
share being of the . par value of $10; that each of the
parties should be elected a director for one year, and be re-
elected such directors for the first five years of the exist-
ence of the corporation; that the officers of the corporation
the first five years of its existence should be Stitch, Lidberg,
Davenport and Coyne, and that said parties as stockhold-
ers should vote for by-laws and resolutions as might be
necessary to carry into effect the provisions of the agree-
ment; also that said Lidberg, Stitch and Davenport jointly
were the owners of certain rights under letters patent of
the United States, issued to Lidberg and Davenport, all
three of whom, in consideration of the agreement to incor-
porate, agreed and promised to assign and transfer all their
right and interest in said letters patent to the proposed cor-
poration on its organization, and that in pursuance of said
agreement Coyne, Lidberg and Stitch procured a license to
be issued to them, authorizing them to open books of sub-
scription for the capital stock of the said proposed corpo-
ration, and that in consideration of the agreement to incor-
porate, and of an agreement to issue 1,250. shares of capital
stock of the proposed corporation to him, Coyne agreed to
advance and pay for carrying on the business of and for
necessary expenses of incorporating the proposed corpo-
ration, not to exceed $1,000; that Coyne advanced from
time to time for said purposes different sums specified in
the bill, in all exceeding the sum of $1,000, but that Lid-
berg, Stitch and Davenport from time to time delayed the
assignment of their several interests in the letters patent,
and finally refused to make any assignment thereof, and
refused to complete the organization of the proposed cor-
poration; that on October 16, 1899, said Lidberg and others
of the defendants, for the purpose of defrauding Coyne,

caused a license to be issued to incorporate another corporation, the Swedish-American Telephone Company, completed the organization thereof, and on November 1, 1899, Lidberg, Davenport and other defendants, naming them, proceeded to do the business theretofore conducted under the name of the Continental Telephone Company at its former place of business, but under the name of said Swedish-American Telephone Company, and by the business so conducted said defendants are receiving large amounts in profits, and that the business is a large, growing and profitable one; that before the organization of the last named corporation, Coyne notified each of the defendants of his, Coyne's, rights and claims under said agreement to incorporate and to assign said letters patent, as above stated, and that each of the defendants, in proceeding with the business, would do so at his peril; but notwithstanding, they wholly disregarded the notice, and proceeded with the business of the Swedish-American Telephone Company, as above stated; also, the bill shows that said Lidberg, Stitch and Davenport are wholly insolvent. There is no allegation in the bill which shows any excuse for appellant's delay in filing the bill from November 1, 1899, when he knew that Lidberg, Stitch and Davenport refused to carry out their agreement to incorporate and to assign said letters patent, until November 26, 1900, when the bill was filed.

A sufficient justification for the dismissal of appellant's bill is the fact of his delay for more than a year after he knew of the refusal to carry out the agreement to incorporate and to assign the letters patent, in filing his bill. Relief, by way of specific performance, as is well settled, is a matter within the discretion of the court, and will not be granted unless the party seeking it acts as promptly as the nature of the case will permit. When there is a long delay, as in this case, unexplained by equitable circumstances, the relief will not be granted. 1 Story on Eq. Juris., Sec. 771; Pomeroy on Contracts, Sec. 403; Anderson v. Frye, 18 Ill. 94; Colby v. Gadsden, 34 Beav. 418; McDermid v. McGregor, 21 Minn. 111.

In the section from Pomeroy on Contracts, cited *supra*,

the author states the rule as to delay in seeking specific performance as follows: "A party seeking the remedy of specific performance, as the actor, must show himself, in the language of many judges, to have been ready, desirous, prompt and eager," and cites numerous cases in which the doctrine has been applied. To like effect is the citation from Mr. Story.

In the Anderson case, *supra*, it is said that if " one applies for relief after a long lapse of time, unexplained by equitable circumstances, his bill will be dismissed," citing numerous cases. The delay in that case was two and one-half years in making application to enforce a contract for the sale of land.

All the authorities also agree that when there has been a change in the circumstances, so that it would be inequitable to enforce specific performance, delay will always bar it, and it is not of controlling importance that there should be a very long delay.

In the Colby case, *supra*, it was held that a delay of seven months, where both the parties were insisting upon the contract being carried out, would not be a bar to relief, but the court quotes with approval the rule that where one party has said that he would have nothing more to do with the contract, the other, desiring its execution, must file his bill speedily.

In the McDermid case, *supra*, a case where one party to the contract had given notice that he would not perform it, a delay of one year was held to be a bar, and the court quotes with approval the following language from Eastman v. Plumer, 46 N. H. 464, viz:

" Those who desire to secure the aid of equity in enforcing the performance of contracts must show themselves prompt, ready and eager to perform them and abide by them."

But upon the merits of the bill we are of opinion that the demurrer was properly sustained, for at least two reasons, viz: First, that equity will not decree the specific performance of an agreement to organize a corporation when three of the four proposed incorporators, as is the case here,

are insolvent; and, second, equity, when it takes jurisdiction to enforce the specific performance of a contract, will enforce it in all its parts, and will not undertake such enforcement where the contract calls for a succession of acts whose performance can not be consummated by one transaction, and which requires protracted supervision. R. R. Co. v. Echternacht, 21 Pa. St. 220; Sheffield, etc., Co. v. Harrison, 17 Beav. 294; Stocker v. Wedderburn, 3 Kay & J. 393, 406; Hetfield v. Willey, 105 Ill. 286; Sub. Con. Co. v. Naugle, 70 Ill. App. 391, and cases cited; Truitt v. Clark, 81 Ill. App. 652.

In the Hetfield case, *supra*, which was a bill for specific performance, it was held that when a contract is " enforced at all, it must be done as the parties made it," and that the court had no rightful authority to enforce it otherwise, and that this rule was announced by numerous cases in the Supreme Court. The court also say, " The rule is a familiar one that applications for the specific performance of a contract are within the sound legal discretion of the court hearing the cause," and that discretion is always controlled by the equitable circumstances of the case and not by the mere caprice of the chancellor.

In the Railroad case cited, *supra*, the Pennsylvania Supreme Court affirmed a decree of the trial court which dismissed a bill seeking to enforce the specific performance of an agreement by the defendant to subscribe certain shares of the capital stock of the railroad company, not then incorporated, and held that if the agreement was a valid contract, the remedy was at law and not in equity.

In the Naugle case, *supra*, which was very fully and carefully considered, it was held that an agreement to construct and equip a railroad and operate it for two years, could not be specifically enforced in equity. The court, speaking through Mr. Justice Sears, say :

" Courts will not undertake to enforce specific performance of contracts, extending over considerable time and including a series of acts essential to a complete performance."

The language is fully supported by numerous cases cited

and reviewed in the opinion, and, as we think, states a principle clearly and directly applicable to the contract here in question, in so far as it provides for the election and re-election of the parties to it as directors and officers of the proposed corporation.

In the Stacker case, *supra*, the High Court of Chancery in England refused to specifically enforce a contract to incorporate a joint stock company and to sell certain letters patent to the company when it should be incorporated. The contract, among other things, provided that the shareholders should be considered directors and the affairs of the company should be governed by them. The court held, among other things, that the entire agreement must be enforced, if at all; that the court could not compel directors to act, and therefore could not enforce that part of the contract.

The clear intention of the incorporation act of this state, as indicated by its provisions, is that subscribers to the capital stock of a corporation should be persons of financial responsibility, and we think a court of equity should be slow to exercise its discretion in enforcing specifically an agreement to incorporate which provides, as the one here in question does, that three-fourths of its capital stock should be subscribed by persons who are insolvent. This contract also provides, as we have seen, that each of the subscribers of stock should be elected a director for one year and re-elected as such director for the first five years of the existence of the corporation, and that each of them should be officers of the corporation for the first five years of its existence. Under the authorities cited the court would not undertake to enforce a part of the agreement only, but would enforce it in all its parts. To enforce these last provisions would require a continuous supervision of the corporation for at least five years. Such an undertaking is, to say the least, impracticable, and is something a court of chancery will not do.

In view of these conclusions it seems unnecessary to discuss other points made and argued by counsel.

The decree of the Superior Court is therefore affirmed.