454

## TEXAS CO. v. ANDRES et ux.
### No. 1794.

United States District Court
D. Idaho, N. D.
April 30, 1951.

<hr />

Ezra R. Whitla, E. T. Knudson, Coeur d'Alene, Idaho, for plaintiff.

Murray Estes, Tom Felton, Moscow, Idaho, for defendants.

CLARK, District Judge.

This is an action for specific performance. On the 6th day of April 1940 the defendants entered into a lease contract which was dated March 27, 1940, with the Texas Company, a California corporation (exhibit 1). This was a standard form of lease used by the said corporation. It is a very lengthy lease, mostly in fine print, with some typewritten riders attached.

The lease (exhibit 1) contained a clause, paragraph 10, as follows: "(10) Option, Lessor hereby gives the lesee the right and option to purchase the demised premises and all structures and improvements thereon at any time during the term of this lease or any extension or renewal thereof for the sum of eight thousand five hundred dollars ($8,500.00) less the sum of Three hundred sixty dollars( $360.00) for each year during which this lease is in effect."

When this clause of the lease was read to the defendants, Carl Andres stated to the attorney for the corporation that he did not understand about this clause and asked about it. It is undisputed that in response to this query he was advised that the leases were all the same with the major oil companies; that the Company was not interested in buying the property; that this clause simply protected the corporation from the defendant selling without giving it the first chance. Defendant also called attention to the personal property that was not shown in the lease and it was then agreed that a

memorandum would be made of the personal property and attached to the lease and the attorney for the Texas Company of California advised said corporation that a list should be prepared and it was to be signed by Andres and the Company. The lease was never completed in this regard by the said Texas Company.

The lease (exhibit 1) also contained a clause paragraph 13 as follows: "(13) Assignment and sub-letting. Lessor consents that lessee may assign or sublet the premises, provided that lessee shall remain liable to lessor for the performance of all the terms thereof."

Following the execution of the lease the Texas Company of California deeded all its property in Idaho to the Texas Company a Delaware Corporation, Plaintiff herein (hereafter referred to as the plaintiff) (exhibit 2).

In this assignment there is no specific mention of any particular property such as the lease (exhibit 1) in question here. The Texas Company of California also assigned and transferred by general assignment (exhibit 3) all personal property owned by it, to the plaintiff. There was no special mention in this assignment of this lease (exhibit 1).

The plaintiff continued to pay the rent and on January 30, 1945 advised the defendants that it was exercising its option to extend the lease for the five year period referred to in the lease (exhibit 4). The plaintiff continued to pay the rent, there was no suggestion that clause 13 of the lease contract (exhibit 1) was to be exercised until after negotiations were carried on, at the request of the defendant, for an increase in rent. April 25, 1950 was the first time the defendants were advised that clause 13 in the lease (exhibit 1) was being relied on by the plaintiff and it is undisputed in the record that the defendants had no knowledge that clause 13 (exhibit 1) could be relied on by the plaintiff or that it intended to exercise the option to buy the property until their letter of April 25, 1950. The plaintiff thereafter made a tender by check for the amount set forth in the lease with the Texas Company of California. There is

nothing included in the tender for the personal property, in fact, the personal property was never mentioned again, after the conversation of April 6, 1940, when it was agreed that a memorandum of the personal property would be prepared and attached to the lease. It is also undisputed that from time to time additional equipment was purchased by the defendants and added to the equipment of the Gas Station in question.

The Court is now asked to require the defendants to deed the gas station with all equipment to the plaintiff for the sum of $4,900 without any consideration for the personal property or equipment added to the property since March 27, 1940 by the defendant. Plaintiff claims this right under the deed (exhibit 2) and assignment (exhibit 3).

The defendant offered to prove the present sale value of the property and the Court refused this offer of proof.

The question here is: Should the Court, under this state of facts require the defendants to deed the property described in the lease, to the plaintiff? I think not.

■ Specific performance is an equitable action. The Court has great discretion in granting or denying it. It is well stated by the Ninth Circuit Court of Appeals in the case of Nygard v. Dickinson, 97 F.2d 53, at page 58: "It must appear that the contract is fair, just, and equitable in all its parts. If, therefore, a decree of specific performance would work hardship or injustice upon the defendant, or operate oppressively upon him, a court of equity will decline to interfere."

Here we have a contract for rental of a service station for what was agreed at the time to be a fair amount. The defendants signed the contract. It was prepared by able counsel representing, presumably a very large corporation. It is filled with fine printed clauses to cover every matter that could possibly pertain to a service station leased by said corporation. Paragraphs 3 and 4 deserve particular mention, only for the purpose of showing how strongly it is worded in favor of the party having it prepared; clause numbered 10 gives the lessee the option to purchase.

The defendant, Carl Andres, was a laboring man, he was not represented by an attorney at any stage of the proceeding leading up to the execution of the lease and the first time that he ever saw the lease was in the office of the attorney for the Texas Company of California, above referred to, in Coeur d'Alene, Idaho, when he and his wife appeared pursuant to notice from said corporation that the lease was at the attorney's office, ready for their signature. It is undisputed that the defendants did not read the lease; it was read and explained to them by the attorney for the lessee. This is the only clause we find that was interpreted for him as to its meaning in the office of the attorney for the Texas Company of California, at the time it was read to him before its execution. It is undisputed that defendant Andres advised counsel for the Texas Company of California at that time that he did not understand that clause. It was explained to him that said corporation was not interested in buying the property, that it simply protected them from defendant selling without giving them the first chance.

It is clear that the defendants never did intend to option the property to the Texas Company of California, there is nothing in the record to show that he ever knew of such requirement. It was never called to his attention or mentioned prior to his asking for an increase in rent some time shortly before they served the notice on him, dated April 25, 1950. The defendants had no intention of selling the property, there is no denial that defendants were induced to sign the lease by the representation that was made to them in the attorney's office in Coeur d'Alene, Idaho, that the option provision simply protected them from his selling without giving them the first chance.

■ This contract was made by the Texas Company of California with the assistance, no doubt, of able counsel. This clause of the contract was explained to the defendant when he was in the office of the attorney for the California corporation. Since it was explained by said corporation to have no legal effect and as the defendants were acting solely on said corporation's interpretation of the meaning of this clause in the lease, it has no legal effect, as stated by the United States Court of Appeals District of Columbia in the case of David v. Kendrick, 86 U.S.App.D.C. 347, 182 F.2d 243. "The court found in substance that the defendants had no intention of binding themselves to sell, that the plaintiff knew this, and that the plaintiff induced the defendants to sign the memorandum by telling them he would return it to them and take back his deposit if they asked him to do so. The plaintiff did not deny making this representation. Since the plaintiff knew that the defendants intended the memorandum to have no legal effect and the plaintiff gave the defendants to understand that he also intended it to have no legal effect, it has none. The court understated the matter in describing plaintiff's conduct as 'overreaching'."

It is contended by the plaintiff here that the defendant is estopped under the decision of the Supreme Court of Idaho, Lane v. Pacific & I. N. Ry. Co., 8 Idaho 230, 67 P. 656, where the Court says that where a party to a contract acts upon it and obtains all of the benefits to be derived thereunder, he is estopped to deny it. That is not in point here, defendant has never had any reason to believe that he was not advised correctly as to the meaning of the original lease. It can also be said that if this lease is to be construed strictly as against the Texas Company of California and also the plaintiff here, we look to paragraph 13 which provided that it would remain liable to lessor for the performance of all the terms of the lease.

The year following the execution of the lease, the lessee, the Texas Company of California, assigned all its property to the Texas Company of Delaware and then brought proceedings to dissolve the corporation and it was dissolved and ceased to exist on November 2, 1941, except for winding up its affairs.

The logical inference cannot be avoided that the Texas Company, a California corporation by its dissolution and having divested itself of all its assets, its agreement to remain "liable to lessor for the performance of all the terms of the lease" became an unenforcible clause of the contract as far as the defendant here is concerned.

At any time after this assignment was made if the assignee had become bankrupt or was in arrears in rent or any other condition by which the defendant here was damaged, the Texas Company, a California Corporation has put itself in such a position that the provision of the agreement was unenforcible.

It is contended that the assignee by accepting the assignment is responsible, that is true, but if it became judgment proof the defendant here could not enforce this clause of the contract as against the party with whom he contracted.

■ It is also undisputed that the lease was never completed by preparing a memorandum of the personal property; it was understood before the signing of exhibit 1 that this would be done and a decree requiring specific performance would allow the defendant nothing for equipment placed on said premises either before or after the signing of exhibit 1. An additional amount would have to be paid for this equipment if the specific performance was ordered. The Court also refused the defendant the right to introduce evidence as to the sale value of the property, the Court should have permitted this. It would no doubt have shown that the property was of a value of several times the amount specified in exhibit 1, and with $360 per year rental deducted from the sale price and with the defendants paying insurance, taxes and upkeep of the property and the well recognized increase in value of real estate and the change in the value of the dollar, that specific performance would work a great financial loss upon the defendants.

It may be that the pleadings should be amended to cover some of the questions here, however, the Court will consider the pleadings as amended to conform to the proof.

The Court is of the opinion that if justice is to prevail specific performance must be denied. Counsel for the defendants are directed to prepare the necessary findings of fact, conclusions of law and decree in accordance with this opinion, serve copy on opposing counsel and submit the original to the Court for approval.