390 P.2d 826

Harold M. JANINDA and Dorothy
I. Janinda, husband and wife,
Plaintiffs-Respondents,

v.

Pete A. LANNING and Edith I. Lanning, hus-
band and wife, Defendants-Appellants.

No. 9362.

Supreme Court of Idaho.

March 27, 1964.

Robert F. McLaughlin, Mountain Home, for appellants.

Hall & Rowett, Mountain Home, for respondents.

SMITH, Justice.

This is an action brought by respondents (plaintiffs), as vendees, against appellants (defendants) vendors, to rescind a contract for the purchase and sale of real property and to recover the amount paid thereunder.

Respondents in their complaint alleged that appellants fraudulently concealed material facts, which, had respondents had knowledge thereof they would not have entered into the contract; that such fraudulent concealment reacted to respondents' injury, and effected reduction in value of the real property by rendering it undesirable and unsafe for rental purposes. Respondents tendered possession of the property to appellants, prayed for cancellation and rescission of the contract, and for return of their down payment of $3,000.

Appellants, in their answer, denied the allegations of the complaint. By way of cross complaint they sought specific performance of the contract. After a trial on the merits without a jury, the court, upon entering findings of fact and conclusions of law, entered judgment in favor of respondents, decreeing that the contract be cancelled and rescinded; also adjudging that respondents recover a balance of their down payment which, after certain credits,

amounted to $2,605.00, with interest. The court denied relief to appellants on their cross complaint. Appellants appealed from the judgment.

Appellants, by their assignments, contend that the trial court erred in entering judgment in favor of respondents. They urge insufficiency of the evidence to support the findings and judgment. We shall briefly review the evidence.

In December 1961, respondent Harold M. Janinda was transferred by his employer from Denver, Colorado, to Mountain Home, Elmore County, Idaho. He considered settling in Moutain Home, and in looking for housing for his family and for income producing property, he consulted a local real estate agency. A Mr. Swearingen of that agency showed respondent several parcels of real estate, including appellants' rental and residence property consisting of duplex apartments, six trailer spaces, and a three-bedroom house. This property was located a short distance outside the city limits of Mountain Home, within the county, and obtained its water supply from two shallow wells on the property.

Being a stranger in the community, respondent sought advice of a local banker who indicated that respondent ought to check on the water supply of the Lanning property. During the early part of February 1962 and before negotiation of the contract on February 7, 1962, respondent inquired of Mr. Swearingen about the water supply of the property. Mr. Swearingen thereupon telephoned appellant Mrs. Lanning, inquiring about the water supply, and specifically, whether the wells on the property had ever been tested for contamination. Mrs. Lanning replied that they had not, but that adjoining landowners had tested their wells with satisfactory results.

At the time of the telephone call appellant Mrs. Lannning knew that a tenant of one of the duplex apartments, a Mrs. Selig, had been admitted to Mountain Home Air Force Base Hospital on January 24, 1962, suffering from an ailment diagnosed as infectious hepatitis. Also, on the night of the 24th Mrs. Selig's husband, a lieutenant in the United States Air Force, had informed appellant that tests taken that day showed the well, supplying water to the duplex, to be contaminated with bacteria. Appellant did not disclose that information to Mr. Swearingen, but imparted the information only, which Mr. Swearingen communicated to respondents, that the wells on the property had never been tested, but that wells belonging to adjoining landowners had been tested with satisfactory results. Respondents relied on that information and made no independent investigation of the wells on appellants' property prior to taking possession on March 1, 1962.

Subsequent to the aforesaid telephone call, but again prior to February 7, 1962,

appellant Mrs. Lanning requested the Department of Health of the State of Idaho to test samples of water taken from the wells on her property. The Department received the samples at its office in Boise, Idaho, on February 3, 1962. The tests made showed contamination of the well supplying water to the duplex apartments. The record does not disclose the specific date that the Department mailed its report of those findings to appellant.

February 7, 1962, the parties negotiated for the sale and purchase of the property. Appellant Mrs. Lanning signed and acknowledged the contract evidencing the transaction on February 13, 1962, and her husband, Mr. Lanning, who was in California, signed and acknowledged it on February 16, 1962. At no time prior to February 7, 1962, did appellant Mrs. Lanning inform respondents that she had requested the Department of Health to examine water samples taken from the wells on the property.

In regard to Mrs. Lanning's knowledge of the water contamination some several days prior to February 14, 1962, the record shows the following:

Mr. Maughan, respondent's witness, was shown to be a sanitarian or health specialist, employed by the Department of Health. After the Department had tested samples of water from the Lanning property and found it to be contaminated, Mr. Maughan called upon Mrs. Lanning on February 14th. He explained to her the existing situation relating to the water and ascertained that she was "chlorinating" the water with a solution containing chlorine. Mr. Maughan testified that chlorination would not solve the problem of detergents which the tests showed to be present in the water in an amount exceeding by three times the allowable limit, which indicated that a new deep well should be drilled. Concerning the time Mrs. Lanning had knowledge of the water contamination, she testified on direct examination that she did not examine the Department's reports of its findings of contamination (mailed to her by the Department) until February 13, 1962, after she had signed the contract for sale of the property. However, her testimony elicited on cross examination showed that she had some information as regards the contamination a few days before Mr. Maughan interviewed her on February 14th; her testimony in that regard appears:

"Q. By February 14 [1962] * * * you knew from Mr. Maughan's personal representation to you that the water was contaminated, did you not?

"A. I knew a few days before that, because I had received these receipts." (Department's reports on the purity of the water.)

Respondents were not informed regarding results of those tests until March

13, 1962, at which time a representative of the State Department of Health informed them that, in order to comply with state health regulations, a new deep well would be required since tests of the water disclosed evidence of unsafe amounts of detergent waste in the water which could not, as in the case of bacteria, be cured by chlorination.

On March 10th, upon payment of rent to respondents, Lieutenant and Mrs. Selig advised that they were vacating the duplex apartment (actually they had not been living there since about February 4th). The Air Force regulations forbade its personnel occupying premises having a contaminated water supply. The tenant in the other duplex apartment also vacated the premises shortly thereafter at respondents' request because of the water contamination.

Respondents investigated ways of correcting the problem of water contamination. They ascertained that a new deep well, indicated as a solution, would cost approximately $3,600.00, but without assurance of a supply of pure water. Respondents then elected to rescind the contract of sale and purchase of the property, and thereupon caused appellants to be duly served with notice of rescission, with tender of possession of the property and demand for return of respondents' payments. Appellants' refusal to comply resulted in this action.

Appellants, in arguing their assignments of error, contend in effect (1) that Lieutenant Selig's testimony as to his conversation with appellant on January 24, 1962, to the effect that reports on samples of water of the well supplying water to his rented duplex apartment showed bacteria contamination, was hearsay and not properly supportive of a part of the trial court's findings and (2) that respondents have not proved that appellants knew prior to the time the contract for sale was negotiated that the water supply was contaminated, and have thus failed to make out a prima facie case of fraud.

Lieutenant Selig's statement to appellant Mrs. Lanning the evening of January 24, 1962, pointing to contamination of the well, was not hearsay. It was a statement of which the witness had personal knowledge and was made within the presence and hearing of the party against whom it was being offered. Compare State v. McConville, 82 Idaho 47, 349 P.2d 114 (1960); State v. Proud, 74 Idaho 429, 262 P.2d 1016 (1953); Quillin v. Colquhoun, 42 Idaho 522, 247 P. 740 (1926); Bell, Handbook of Evidence for the Idaho Lawyer 124, 125 (1957). The statement was relevant and material to a proper determination of the issues as framed by the pleadings and was admissible. Mountain States Telephone & Telegraph Co. v. Jones, 76 Idaho 241, 280 P.2d 1067 (1955); Williams v.

Idaho Potato Starch Co., 73 Idaho 13, 245 P.2d 1045 (1952); Morton v. Morton Realty Co., 41 Idaho 729, 241 P. 1014 (1925). Appellant not having objected to the introduction of such evidence on direct examination of Lieutenant Selig, it may stand as evidence for all purposes, including support of a finding of fact by the trial court. Emerson v. Quinn, 79 Idaho 358, 317 P.2d 344 (1957); Naccarato v. Village of Priest River, 68 Idaho 368, 195 P.2d 370 (1948); Bell, supra, at 19.

■ Appellants further contend that respondents have not by clear and convincing evidence met their burden of proving fraud. Thomson v. Marks, 86 Idaho 166, 384 P.2d 69 (1963); Walker v. Nunnenkamp, 84 Idaho 485, 373 P.2d 559 (1962). Such contention is without merit.

Appellant Mrs. Lanning on January 24, 1962, was apprized of facts pointing to contamination of one of the wells; this was two weeks prior to negotiation of the sale and purchase contract between the parties. Appellant thereupon submitted samples of the water for examination by the State Department of Health, again prior to February 7, 1962, the date of the contract. Appellant was also put on notice prior to February 7th that the water supply was of material concern to respondents, by the telephone call to appellant by Mr. Swearingen, her real estate agent. While the parties were dealing at arms length, those aspects of the case required of appellant a duty to disclose all facts concerning the matter of water supply on her property, then in contemplation of purchase by respondents. Particularly, the duty of disclosure is required to be observed "in cases involving latent dangerous physical conditions of land." Prosser on Torts, § 87 at 535 (2nd ed. 1955). Appellant regarded her property as income producing property and was fully aware, as was her agent, that respondents intended buying it for the same purpose; and admitted on cross examination that if "I had gone on owning the place and I had had contamination, * * * I probably would have put in a chlorine system." Respondents relied upon appellant's representations and were under no duty to make an independent investigation of their own. Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347 (1951); Cf. Thomson v. Marks, supra, and Walker v. Nunnenkamp, supra.

■ The rule decisive of the issue is stated in Restatement of Contracts, sec. 472, Comment b (1932):

"* * * if a fact known by one party and not the other is so vital that if the mistake were mutual the contract would be voidable, and the party knowing the fact also knows that the other does not know it, non-disclosure is not privileged and is fraudulent."

And in Pashley v. Pacific Electric R. Co., 25 Cal.2d 226, 153 P.2d 325 (1944), quoting 12 R.C.L. § 71, p. 310, it is stated:

"Even though one is under no obligation to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which will materially qualify those stated. If he speaks at all he must make a full and fair disclosure."

See also Gilbert v. Corlett, 171 Cal.App.2d 116, 339 P.2d 960 (1959), (vendor was duty bound to disclose contents of engineer's report which indicated property was of little value); Heise v. Pilot Rock Lumber Co., 222 Or. 78, 352 P.2d 1072 (1960); Obde v. Schlemeyer, 56 Wash.2d 449, 353 P.2d 672 (1960); Sanfran Company v. Rees Blow Pipe Mfg. Co., 168 Cal.App.2d 191, 335 P.2d 995 (1959); Doran v. Milland Development Company, 159 Cal.App.2d 322, 323 P.2d 792 (1958); Sparks v. Guaranty State Bank, 182 Kan. 165, 318 P.2d 1062 (1957); Villalon v. Bowen, 70 Nev. 456, 273 P.2d 409 (1954); Deardorf v. Rosenbusch, 201 Okl. 420, 206 P.2d 996 (1949).

That the pure condition of a water supply on property being offered for sale is of material concern cannot be doubted. The Sanitary Code of Elmore County, admitted in evidence, specifically provides that all rental property within the county must provide adequate water and sewage disposal systems. Appellants were governed by the provisions thereof. The policy of such Code is to place into effect rules and regulations deemed necessary and proper to prevent the outbreak and spread of dangerous, contagious and infectious diseases. See I.C. § 39–301.

The recent Washington case of Obde v. Schlemeyer, supra, also deals with concealment of material facts relating to a health hazard of an apartment house sold to plaintiffs by defendants. The Washington Supreme Court traced the history of fraudulent concealment and non-disclosure from the time of the landmark decision in Peek v. Gurney, L.R., 6 H.L. 377 (1873), and summarized its position by quoting from Keeton, Fraud-Concealment and Non-Disclosure, 15 Tex.L.Rev. 1, et seq. (Dec. 1936), as follows:

"'It is of course apparent that the content of the maxim "caveat emptor," used in its broader meaning of imposing risks on both parties to a transaction, has been greatly limited since its origin. When Lord Cairns stated in Peek v. Gurney that there was no duty to disclose facts, however morally censurable their non-disclosure may be, he was stating the law as shaped by an

**98**

individualistic philosophy based upon freedom of contract. It was not concerned with morals. In the present stage of the law, the decisions show a drawing away from this idea, and there can be seen an attempt by many courts to reach a just result in so far as possible, but yet maintaining the degree of certainty which the law must have. The statement may often be found that if either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose then his silence is fraudulent.

" 'The attitude of the courts toward non-disclosure is undergoing a change and contrary to Lord Cairns' famous remark it would seem that the object of the law in these cases should be to impose on parties to the transaction a duty to speak whenever justice, equity, and fair dealing demand it.' " 353 P.2d at 675.

The evidence in support of the findings of the trial court is substantial and competent, though in instances somewhat conflicting, and fully sustains the judgment; therefore the findings and judgment will not be disturbed. Thomson v. Marks, supra.

The judgment of the trial court is affirmed. Costs to respondents.

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.