410 P.2d 434

Anton SUCHAN and Blanche Suchan, husband and wife, Plaintiffs-Appellants,

v.

C. H. RUTHERFORD and Beulah Rutherford, husband and wife, Defendants-Respondents.

No. 9608.

Supreme Court of Idaho.

Jan. 14, 1966.

Rehearing Denied Feb. 7, 1966.

Rayborn, Rayborn & Rayborn, Twin Falls, for appellants.

Hepworth & Nungester, Buhl, for respondents.

TAYLOR, Justice.

In August, 1964, one George Baxter, a real estate agent, interested plaintiffs (appellants) in the purchase of 80 acres of farm land owned by defendants (respondents). August 25, 1964, plaintiffs, with Baxter, drove through the west 40 acres on an inspection tour of the property. Plaintiff Suchan testified that on this occasion he asked Baxter, "How much rock is there?" and that Baxter replied, "There is no rock. That's one of the best 40's in the country." He also testified that he did not make inquiry as to the existence of rock upon the east 40; that he saw irrigation ditches, covered with weeds, which crossed the farm at approximately the dividing line between the two 40 acre tracts, but he did not know whose ditches they were, and made no inquiry as to the ownership of the easements therefor, but assumed they were the Rutherfords' ditches. He further testified that they (plaintiffs and Baxter)

got out of the car and looked around. The plaintiffs then inspected the tenant house on the farm, including the basement which was dug into the earth, leaving unfinished some wall areas exposing the formation consisting of 18 inches of soil, below which lay gravel and rock. Suchan admitted observing this exposure of the soil formation and that Rutherford had said there was some rock north of the house, on the east forty. He also testified he observed a canal or ditch at the east edge of the property; he realized it could not be used for irrigation of that part of the farm because of the slope of the land, and assumed it was used as a drain ditch. Baxter testified he did not make any untruthful representation concerning the farm; that he did not tell plaintiffs there was no rock on it; and that he told them he thought it was a good farm with few rocks. Plaintiffs admit they were advised there were a few rocks on the land, all confined to two small areas.

After the inspection of the premises and on August 25, 1964, plaintiffs and defendants executed a written agreement for the sale by defendants to plaintiffs of the 80 acre farm. The agreed purchase price was $39,000 of which $1,000 "earnest money" was paid upon execution of the agreement. The balance of $38,000 was provided to be paid as follows:

"$10,500.00 thirty days; $2,500.00 on Jan. 2 of each year until paid. Payments to be applied first on interest

then balance on principal. Interest to be 5½% beginning Jan. 1, 1965; Purchaser is allowed to pay one third (⅓) of the balance per year until paid if he prefers. Purchaser has right to enter property to make outside repairs and to do farm work before 11/10/64."

On August 27th, plaintiffs, having heard through neighbors that there was rock on the farm, informed Baxter they would not take the place. On August 29th they met with Rutherfords and reaffirmed the contract. On September 9th, on hearing further stories of rock on the land, plaintiffs decided to abandon the deal. On September 24th Mr. Suchan inspected the property in the company of one Edward Hejtmanek, a field man for the Twin Falls County Weed Department. He then learned that there are three neighboring farmers who had easements for ditch rights of way across the farm, and that the rock on the property was sufficient to prevent smooth operation of his machinery on the land. On that date plaintiffs gave written notice to the sellers of their rescission of the contract on the grounds of fraudulent representations as to the amount of rock on the property, and nondisclosure of ditch rights of others, across the property.

October 2, 1964, plaintiffs commenced this action for the rescission of the contract and the return of the $1,000 paid thereon, alleging fraudulent representation as to the amount of rock on the premises and the nondisclosure of the ditch rights, held by others, across the land. Defendants by answer denied the allegations of fraud and nondisclosure and by counterclaim sought a decree requiring specific performance of the agreement by plaintiffs, or, in the alternative, if specific performance could not be decreed, that defendants be given a judgment for $8,000 damages for breach of the contract.

November 4, 1964, the cause was tried to the court, sitting without a jury. Findings of fact and conclusions of law were waived by stipulation of the parties and judgment was entered in favor of the defendants and against the plaintiffs for specific performance of the contract, as follows:

"1. That plaintiffs' complaint be dismissed.

"2. That the agreement set forth in the counterclaim and proved in this cause be specifically performed and that the defendants and counterclaimants have and recover from the plaintiffs and counter defendants, the sum of $10,500 and that such sum be paid immediately to the defendants and counterclaimants by the plaintiffs and counter defendants as provided for in the agreement and that the plaintiffs and counter defendants pay the balance of the purchase price at the times provided for under the terms of said agreement."

Plaintiffs brought this appeal from the judgment and assigned as error the dismissal of their complaint and the entry of judgment against them for specific performance of the contract.

■ Since findings were waived, we are not advised of the facts upon which the court based its conclusion that the contract had not been induced or procured by means of fraud on the part of defendants. The evidence would support findings that no fraudulent representations were made either by the defendants or their agent Baxter as to the condition of the farm with reference to "rocks" and also that plaintiffs did not rely upon any representations made in that regard, but that they relied upon their own investigation and inspection of the premises.

As to the ditch right of way easements held by others, it was established that there were three ditches crossing the farm, the rights of way for which belong to neighboring farmers. Three such ditches crossed the farm at approximately the center thereof occupying a strip of land 40 feet wide. Although covered by weeds, these ditches were observed by plaintiffs. Plaintiffs made no inquiry and were not advised by defendants or their agent of the ownership of the ditches or the rights of way therefor. Plaintiffs contend that it was the duty of defendants and their agent to inform them of such ditches and of the burden thereof upon the property, and that their failure to do so was fraudulent. They rely upon Janinda v. Lanning, 87 Idaho 91, 390 P.2d 826 (1964). That case is distinguishable from this. There the contamination of the water supply, for the residential property involved, was not a condition which the prospective purchaser could observe by inspection of the premises. Also, in that case the prospective buyer made inquiry, through the agent of the seller, as to the purity of the water supply. In response to such inquiry the seller failed to reveal to the buyer that the seller had been advised that the water was contaminated.

■ In this case the ditches were apparent to plaintiffs' casual observation and plaintiffs did observe them. The existence of three ditches located side by side through the center of the farm, occupying a strip of land 40 feet wide, would indicate to an experienced farmer that there were more ditches in that location than would be required for the irrigation of the property traversed by them, and would put such a farmer upon inquiry as to the ownership thereof. It was established that plaintiff Suchan was a farmer and had lived and engaged in farming, as a tenant, in Twin Falls county for 49 years. He had lived one year in the same section in which the Rutherford farm was located. It was also shown that plaintiffs were familiar with the fact that in the irrigated area in Twin Falls county the ownership by one farmer of a

ditch right or easement across a neighboring farm, was a common thing. In such circumstances the nondisclosure was not fraudulent.

 The issue as to the availability of specific performance is more difficult of solution. The basic, underlying rule is that equity will not intervene where the aggrieved party has a plain, speedy, adequate, and complete remedy at law. However, in the case of contracts involving the sale or lease of land, the courts assume that the aggrieved party does not have an adequate remedy at law and is entitled to specific performance. The reasons assigned by the authorities for the rule applied in land contract cases are not convincing when applied to the facts of the case before us. The following are some of such reasons:

"A specific tract is unique and impossible of duplication by the use of any amount of money."

and referring to the vendor:

"His damages are usually measured by the contract price less the value of the land retained; but the land is a commodity that has no established market value, and the vendor may not be able to prove what his real harm will be. Even if he can make this proof, the land may not be immediately convertible into money, and he is deprived of the power to make new investments." 2

Restatement Contracts, § 360, Comments a and c.

"The most important aspect of land, in so far as equity jurisdiction for specific performance is concerned, is that no piece of land has its counterpart anywhere else, and is impossible of duplication by the expenditure of any amount of money." 49 Am.Jur., Specific Performance, § 92.

"Equity adopts this principle, not because the land is fertile, or rich in minerals, but because it is land, a favorite and favored subject in England and every country of Anglo-Saxon origin. Land is assumed to have a peculiar value, * * *." 81 C.J.S. Specific Performance § 62.

As originally developed, the rule had particular application in making the remedy available to the vendee, and the remedy was extended and made available to the vendor by way of the mythical rule of mutuality of remedy. The grounds for this extension of the doctrine have been variously stated:

"Various reasons have been advanced for the doctrine that specific performance may be granted the vendor. In some decisions the doctrine has been based on the principle of mutuality, that is, that since the vendee may obtain specific performance the vendor is likewise entitled to that relief. In other decisions the reason is that the

vendor's remedy at law is inadequate. Finally, the doctrine of 'equitable conversion,' by which the vendee is deemed a trustee of the purchase price for the vendor, has been said to be the reason for the doctrine." 81 C.J.S. Specific Performance § 63, page 564.

The land here involved is not unique. It is irrigated farm land common to the general area in which it is located. Sales of similar land are frequent and it is not difficult to establish its market value. The courts of this state have not hesitated to determine the market value of farm lands in breach of contract cases, and of lands in general in condemnation proceedings, nor have they hesitated to determine the damages to be allowed therefor.[1]

As to the speculation that the vendor may otherwise lose opportunities for other investments, it is patent that such a reason is so remote and speculative as to have no standing in a court of law, and yet it is said that equity follows the law. In any event, such a consideration has little application in this case since under the con-

1. Land Contracts

Veldez v. Christensen, 89 Idaho 285, 404 P.2d 343 (1965); Anderson v. Michel, 88 Idaho 228, 398 P.2d 228 (1965); Walker v. Nunnenkamp, 88 Idaho 222, 398 P.2d 444 (1965); Andrus v. Irick, 87 Idaho 471, 394 P.2d 304 (1964); Miller v. Remior, 86 Idaho 121, 383 P.2d 596 (1963); Melton v. Amar, 83 Idaho 99, 358 P.2d 855 (1961); Scogings v. Love, 79 Idaho 179, 312 P.2d 570 (1957); Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020 (1954); Williamson v. Smith, 74 Idaho 79, 256 P.2d 784 (1953); State ex rel. Robins v. Clinger, 72 Idaho 222, 238 P. 2d 1145 (1951); Koch v. Glenn, 53 Idaho 761, 27 P.2d 870 (1933); Ringer v. Wilkin, 32 Idaho 330, 183 P. 986 (1919).

Condemnation

Bare v. Dept. of Highways, 88 Idaho 467, 401 P.2d 552 (1965); Roark v. City of Caldwell, 87 Idaho 557, 394 P.2d 641 (1964); Johnston v. Boise City, 87 Idaho 44, 390 P.2d 291 (1964); Hadfield v. State ex rel. Burns, 86 Idaho 561, 388 P.2d 1018 (1963); Mabe v. State ex rel. Rich, 86 Idaho 254, 385 P.2d 401 (1963); State ex rel. Rich v. Halverson, 86 Idaho 242, 384 P.2d 480 (1963); State ex rel. Rich v. Bair, 83 Idaho 475, 365 P.2d 216 (1961); State ex rel. Rich v. Sweet, 82 Idaho 191, 351 P.2d 230 (1960); Farris v. City of Twin Falls, 81 Idaho 583, 347 P.2d 996 (1959); State ex rel. Rich v. Fonburg, 80 Idaho 269, 328 P.2d 60 (1958); Hughes v. State, 80 Idaho 286, 328 P.2d 397 (1958); State ex rel. Rich v. Hansen, 80 Idaho 201, 327 P.2d 366 (1958); State ex rel. Rich v. McGill, 79 Idaho 467, 321 P.2d 595, 73 A.L.R.2d 613 (1958); State ex rel. Rich v. Dunclick, Inc., 77 Idaho 45, 286 P.2d 1112 (1955); Renninger v. State, 70 Idaho 170, 213 P.2d 911 (1950); Village of Lapwai v. Alligier, 69 Idaho 397, 207 P.2d 1025 (1949); U. S. v. 3969.59 Acres of Land, 56 F.Supp. 831 (D.C.Idaho 1944); State ex rel. McKelvey v. Styner, 58 Idaho 233, 72 P.2d 699 (1937); Powell v. McKelvey, 56 Idaho 291, 53 P.2d 626 (1935); Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, 286 P. 353 (1930); City of Lewiston v. Brinton, 41 Idaho 317, 239 P. 738 (1925); Crane v. City of Harrison, 40 Idaho 229, 232 P. 578, 38 A.L.R. 15 (1925); Oregon-Washington Ry. & Nav. Co. v. Campbell, 34 Idaho 601, 202 P. 1065 (1921); Tyson Creek R.R. Co. v. Empire Mill Co., 31 Idaho 580, 174 P. 1004 (1918); Idaho-Western Ry. Co. v. Columbia, etc., Synod, 20 Idaho 568, 119 P. 60, 38 L. R.A.,N.S., 497 (1911); I.C. § 7-711(1).

tract here involved the major portion of the purchase price is deferred and not *fully* payable until the end of the 18th year of the payment period provided by the contract.

■ The rule requiring mutuality of remedy, at one time highly regarded as a reason for extending the remedy of specific performance to the vendor, has been, of necessity, so perforated with exceptions as to lose substantial force.

"(2) The fact that the remedy of specific enforcement is available to one party to a contract is not in itself a sufficient reason for making the remedy available to the other; but it is of weight when it accompanies other reasons, and it may be decisive when the adequacy of damages is difficult to determine and there is no other reason for refusing specific enforcement. * *

"Comment * * * e. Bilateral contracts for the sale of land or unique chattels for a price in money are specifically enforceable at the suit of the vendee, because of the special character of the subject matter that he seeks. This reason is not applicable in a suit brought by the vendor to compel payment of the price; but the remedy is nevertheless available to him prior to conveyance (see § 360). The rule stated in this Subsection is one of the reasons for reaching this result.

"f. There are certain reasons, wholly apart from any concept of mutuality, by which the remedy of specific performance is made unavailable to one party to a contract. Such, for example, are difficulty of enforcement, interests of the public, and hardship. * * *

"(See the Illustrations 1–7 of Subsection (1) for cases in which the fact that one party can get a decree for specific performance does not make it available to the other.)" 2 Restatement, Contracts, § 372, pp. 677, 678, 681, 682.

"It [the contract] must be, in general, *mutual* in its obligation and in its remedy. This doctrine is constantly stated by the courts, but there are so many exceptions, especially with respect to the obligation, that the rule is far from universal. It may be said, however, as a general proposition, that where a contract was intended to bind *both* the parties, and for any reason one of them is not bound, he cannot compel performance by the other. (So numerous and so varied are the exceptions to this rule that it is at present of little force as a rule. It is held in many modern cases and is the view of the American Law Institute that 'The fact that the remedy of specific enforcement is not available to one party is not a sufficient reason for refusing it to the other party.' Mutuality of

obligation is one thing and mutuality of remedy another.)" 4 Pomeroy's Equity Jurisprudence, 5th Ed., § 1405, pp. 1042, 1043.

Cf. Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686 (1950). So in this case the fact that specific performance would have been available to plaintiffs, as vendees, had defendants refused to perform, does not require equity to extend the remedy to defendants, as vendors, upon plaintiffs' refusal to perform. In each case equity must consider all factors affecting the availability of the remedy.

■ Ordinarily equity will not grant a decree of specific performance of a contract the enforcement of which requires supervision by the court over an extended period of time. 4 Pomeroy's Equity Jurisprudence, 5th Ed., § 1405b, pp. 1048, 1049.

"It is a settled principle that a court of equity will ordinarily decree specific performance only when it can dispose of the matter in controversy by a decree capable of present performance; it will not decree a party to perform a continuous series of acts extending through a long period of time, * * *." 81 C.J.S. Specific Performance § 75, p. 584.

"As a general rule, courts of equity refuse to decree the specific performance of a contract where its provisions and stipulations are so multifarious and its obligations are so continuous as to make the effective enforcement of a decree impossible, or require constant and long-continued supervision by the court and further supplemental proceedings in order to enforce the defendant's compliance with the decree and his performance of the constantly recurring duties of the contract. This is particularly true where performance will extend over a considerable period of time and include a series of acts, as is the case of a building and construction contract. * * *" 49 Am.Jur., Specific Performance, § 70, p. 85.

"* * * Where there is a public interest involved, a court of equity may take control of a business and conduct it for a while, but where only private interests are concerned, the court will not assume control of a business, nor enter a decree the enforcement of which may require it to control and conduct the business, unless the complainant is wholly without remedy. * * *" 49 Am.Jur., Specific Performance, § 71, p. 87.

"Specific enforcement will not be decreed if the performance is of such a character as to make effective enforcement unreasonably difficult or to require such long-continued supervision by the court as is disproportionate to the advantages to be gained from such

a decree and to the harm to be suffered in case it is denied.

"Comment: a. The rule stated in the Section does not attempt to indicate a method of determining when the degree of difficulty is unreasonable or how long a supervision is disproportionate to the gains and losses involved. When the plaintiff's need is great, especially after part performance rendered, or the public interest is involved, the court does not shrink from the difficulties involved in continued supervision. * * *" 2 Restatement Contracts, § 371, pp. 675, 676.

Cf. Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351 (1951).

In Security Builders, Inc. v. Southwest Drug Co., Inc., 244 Miss. 877, 147 So.2d 635 (1962), the court declined to order specific performance by lessee of a lease covering a period of ten years, saying:

"* * * the principle nevertheless seems to be well-settled in our own State as well as other jurisdictions that specific performance of a provision in a lease-contract for the continued occupancy and use of the premises by the lessee for a specified purpose, and for a definite period of time, will not be ordered where the continued operation of the business of the lessee would require the superintendence of the court from time to time during the period of such lease." 147 So.2d at 639.

In Bromberg v. Eugenotto Construction Co., 158 Ala. 323, 48 So. 60, 19 L.R.A., N.S., 1175 (1908), the court refused to enforce performance of a contract to let a certain amount of floor space in a building to be constructed, which would require supervision of the method of construction to produce the requisite space.

In Cahalan Inv. Co. v. Yakima Central Heating Co., 113 Wash. 70, 193 P. 210 (1920), the court refused to enforce a heating contract, saying:

"* * * A court of equity is always loath to specifically enforce a contract the enforcement of which requires the subsequent supervision and direction of the court, especially so where the contract extends over a considerable period of time. Here the period of time for which this supervision must continue, according to the decree as entered, is three years. * * * To conduct a private business is not the function of a court of equity. Where there is a public interest involved, to take control of a business is proper, and is sometimes necessary, even though the act may involve the conduct of the business for a time. But where, as here, only private interests are involved, the court will not assume control of a business, nor enter a decree the en-

forcement of which may require it to control and conduct the business unless the complaint is wholly otherwise without remedy.

" 'A court of equity can decree specific performance only when it can dispose of the matter in controversy by a decree capable of present performance, but it cannot decree a party to perform a continuous duty, extending over a series of years, but will leave the aggrieved party to his remedies at law.' Roquemore & Hall v. Mitchell Bros., 167 Ala. 475, 52 South. 423, 140 Am.St.Rep. 52. * * *

" * * * A court of equity will not ordinarily specifically enforce the performance of a private contract where the aggrieved party has an adequate remedy at law. Here we think there is such an adequate remedy. The respondent can maintain an action at law in damages for a breach of the contract. The argument advanced against this is the difficulty of making proofs of the actual loss. But the facts present nothing unusual in this respect. The contract was breached when the appellant refused to perform. There can be but one breach, and the respondent now has the right to recover in a single action all the damages it has suffered or will suffer by reason of the breach." 193 P. at 212.

In Ambassador Foods Corp. v. Montgomery Ward & Co., 43 Ill.App.2d 100, 192 N.E.2d 572, 573 (1963), the court refused specific performance of a contract for the operation of a concession to sell cookies, doughnuts, etc., in defendant's store. The term was for five years, only two of which remained unexpired. The court quoted from Langson v. Goldberg, 298 Ill.App. 229, 18 N.E.2d 729 (1939) as follows:

" 'The rule applicable to an action of the character before us is that a contract which by its terms calls for a succession of acts, whose performance cannot be consummated by one transaction and which requires protracted supervision and direction, cannot be specifically enforced. Harley v. Sanitary Dist. of Chicago, 54 Ill.App. 337; Grape Creek Coal Co. v. Spellman, 39 Ill.App. 630; that equity, when it takes jurisdiction to enforce the specific performance of a contract will enforce it in all its parts, and will not undertake such enforcement where the contract calls for a succession of acts whose performance cannot be consummated by one transaction, and which requires protracted supervision. Hernreich v. Lidberg, 105 Ill.App. 495.' " 192 N.E. 2d at 576.

" * * * A court of equity can decree specific performance only when it can dispose of the matter in contro-

versy by a decree capable of present performance, but it cannot decree a party to perform a continuous duty, extending over a series of years, but will leave the aggrieved party to his remedies at law: * * *." Roquemore & Hall v. Mitchell Bros., 167 Ala. 475, 52 So. 423, 140 Am.St.Rep. 52, at 53, 54 (1910).

The case of Locklear v. Tucker, 69 Idaho 84, 203 P.2d 380 (1949), is to be distinguished from this in three significant particulars: (1) The action was brought by the purchaser; (2) The period of payment was limited to three years (annual payment $500); and (3) the contract required the vendors to place a deed to purchaser in escrow. There was no need of supervision by the court.

In this case the balance of the purchase price of $37,500 was made payable over a period of 18 years. During all of plaintiffs' 49 years of farming they had never owned a farm, but had been tenant farmers only. It is evident from their background and the terms of their contract that plaintiffs would be dependent upon the income from the farm to make the required payments.

■ Equity will not strictly enforce a contract when to do so would be unjust, oppressive or unconscionable.

" * * * The general rule may be laid down that a court of equity in the exercise of its discretion in granting such relief will refuse to grant a decree of specific performance of a contract where the performance would produce hardship or injustice to the defendant not reasonably within the contemplation of the parties at the inception of the contract; such hardship or injustice need not arise from fraud or mistake and need not be such as will prevent the contract from becoming obligatory in point of law, but exists whenever the contract would produce a condition unjust to the defendant, followed by injurious consequences which could not be deemed to have been contemplated when he executed the contract. * * *" 49 Am. Jur., Specific Performance, § 59.

"The contract and the situation of the parties must be such that the remedy of specific performance will not be *harsh or oppressive*. This rule generally operates in favor of defendants; but may be invoked by a plaintiff when a defendant demands the remedy by counter-claim or cross-complaint. The oppression or hardship may result from unconscionable provisions of the contract itself; or it may result from the situation of the parties, unconnected with the terms of the contract or with the circumstances of its negotiation and execution; that is, from external facts or events or circumstances which control or affect the situation of the de-

fendant." 4 Pomeroy's Equity Jurisprudence, 5th Ed., § 1405a, p. 1044.

"The point has been made that it is not the legal right of a party to a contract to have it enforced specifically. In order to secure this relief he must show that no oppression or unconscionable advantage has been taken of the other party to the contract since he comes into a court of conscience asking for a remedy beyond the letter of his strict legal right. He asks for a favor beyond even his equitable rights when he bases his claim to that favor upon a hard, oppressive, or technical advantage. To come within the equitable rule he must stand before the court prepared to meet its scrutiny, relying upon the fairness and equitable character of the contract. This must not only be his own position, but he must also show that it is not unjust or oppressive to the defendant to compel him to perform specifically. Stone v. Pratt (1860) 25 Ill. 25.

"In the exercise of its discretionary powers to determine when the equitable relief of specific performance may be invoked, one of the general rules formulated and followed is that this equitable relief will not be granted if, under the circumstances, either because of the inequitable character of the contract or other reason, the result of the

specific enforcement of the contract would be harsh, inequitable, oppressive, or unconscionable." 65 A.L.R., Anno., Specific Performance as Matter of Right, pp. 57, 58, where numerous authorities are collected.

See also, 81 C.J.S. Specific Performance § 18.

In Texas Co. v. Andres (Dist.Ct.Idaho) 97 F.Supp. 454 (1951), the court declined, on the ground of hardship and oppression, to enforce an option contract to sell, contained in the lease of a service station property, after a period of ten years, during which time the lessor was unaware of the efficacy of the option provision and the property had notably increased in value.

We do not infer that the contract in this case is in terms unfair or oppressive. But over the long period of time during which it will remain executory it may in fact become just that. Should such a situation arise, could the court then refuse to execute its decree?

The remedy of specific performance of a land contract is not a matter of right, but rests in the discretion of the court. Bedal v. Johnson, 37 Idaho 359, at 384, 218 P. 641 (1923); Vincent v. Larson, 1 Idaho 241 (1869).

" * * * Giving a literal interpretation to the expressions of the court upon the subject there appears a re-

markable harmony of opinion to the effect that the granting of relief by a decree or judgment requiring the specific performance of a contract rests in the 'sound' or 'judicial' discretion of the court." 65 A.L.R., Anno., 7, at 9.

■ It cannot be seriously contended that the remedy at law via damages was not adequate, plain, speedy, and complete in this case. Plaintiffs commenced the action thirty-seven days after execution of the contract. They had not taken possession of the property. There was no rental value, nor any depreciation or enhancement in the value of the property, to be considered. Vendors' damages were readily ascertainable. They could have been made whole with a minimum of delay and inconvenience. A judgment for the amount determined would have ended the controversy promptly.

The judgment, as to fraud, is affirmed; as to specific performance, it is reversed, and the cause is remanded with directions to the trial court to reopen the case, take evidence on and determine defendants-counterclaimants' damages, and to give them judgment for the amount found.

Costs to appellants.

McFADDEN and SMITH, JJ., concur.

McQUADE, Chief Justice (Dissenting):
I dissent on the basis of Machold v. Farnan, 14 Idaho 258, 94 P. 170 (1908).

KNUDSON, J., concurs with the dissent.

## ON PETITION FOR REHEARING

TAYLOR, Justice.

■ By petition for rehearing respondents urge reconsideration of propositions advanced by them in their original brief. Their assertion that the effect of this decision is to give the choice of remedies to the wrongdoer, is not a correct application of the decision. The effect of the decision is to require a vendor, seeking specific performance of a preliminary "receipt and agreement to purchase" real estate, which—except for the payment of the one thousand dollars "deposit and earnest money"—remains wholly executory, with possession still in the vendors, to show that the remedy of damages, for some reason, is not adequate, speedy, complete, or equitable. Petitioners cite Koch v. Glenn, 53 Idaho 761, 27 P.2d 870 (1933), wherein this court said that upon breach of a contract by the vendees, the vendors had three remedies: (1) rescission; (2) specific performance; or (3) damages. That case is not in point here. There, the vendors, after default of the vendees, took possession of the property and brought action for damages against the vendees. Specific performance was not sought in that case and nothing was said therein as to what proof would have been necessary to support a decree for specific performance, had such been sought.

Petitioners again urge the majority rule that specific performance is available to a vendor upon breach by the vendee of a contract for the sale of real estate. The reason for refusing to apply that rule in this case was amply developed in the original opinion.

In opposition to the rule that a court of equity will not ordinarily specifically enforce a contract requiring a long period of supervision, petitioners cite Locklear v. Tucker, 69 Idaho 84, 203 P.2d 380 (1949) and McCandless v. Schick, 85 Idaho 509, 380 P.2d 893 (1963). The Locklear case was distinguished in the original opinion. McCandless v. Schick was also an action brought by the vendee, not by the vendor, and the adequacy of the remedy at law was not considered in that case.

Petitioners specifically object to the conclusion of fact in the original opinion that the vendees would be dependent upon income from the farm to make the annual payments. It is true, the record does not reveal the financial ability of the vendees, and the contract did give them the option to pay the balance in three payments. However, payments over a period of 18 years was provided for and the court could not enforce earlier performance. Should a breach occur on the part of the purchasers during that period, by reason of inability to pay, the vendors' remedy would be by action for breach of contract—as Justice McFadden said in McCandless v. Schick. In such event the vendors would have to recoup by resort to the land. The court could not, in terms, enforce its judgment.

Neither in their original briefing nor upon this petition for rehearing do the respondents assert, or offer to show, that their remedy by way of damages would be inadequate, untimely, incomplete, or in any respect inequitable. They do not assert that they could not be made whole by way of damages. Apparently they want more than to be made whole. In urging that specific performance is available, as a matter of right, to the vendor in a case such as this, petitioners assert that this decision confuses and jeopardizes the law relating to land contracts. Such reasoning ignores the basic rule that equity will not intervene when the remedy at law is adequate, speedy and complete. This basic rule is as old as the jurisdiction of equity. 30 C.J.S. Equity §§ 7, 19, 20; I.C. § 73–116.

Petition denied.

McFADDEN, C. J., and SMITH, J., concur.

McQUADE, J., dissents.