SECURITY BUILDERS, INC. *v.*
SOUTHWEST DRUG COMPANY, INC.

No. 42457          December 10, 1962          147 So. 2d 635

878

*Cox, Dunn & Clark,* Jackson, for appellant.

*Teller, Biedenharn & Rogers,* Vicksburg; *T. Eugene Caldwell,* Jackson, for appellee.

McGEHEE, C. J.

Prior to October 22, 1957, the appellant, Security Builders, Inc., was engaged in business at Jackson, Mississippi, and the appellee, Southwest Drug Company, Inc., was engaged in the operation of a drug store in the North Hills Shopping Center at Meridian, Mississippi.

On October 22, 1957, the appellant entered into what is designated as the North Hills Shopping Center lease-contract with the appellee, leasing a drug store and lunch counter in the said shopping center for a period of ten years.

The bill of complaint, which was filed in December 1961, alleges that the appellee had given notice to the appellant that it was going out of business and that it would cease to operate the drug store and lunch counter covered by the lease from and after January 1, 1962.

Thereupon, the appellant filed its bill of complaint in the Chancery Court of the First Judicial District of Hinds County, Mississippi, for an injunction to prohibit the appellee from ceasing the operation of the retail drug store and lunch counter under the lease-contract, and to prevent the appellee from removing its merchandise and business from the said shopping center. On the bill of complaint, a temporary injunction was issued.

The appellant owns a tract of land in Meridian, Lauderdale County, Mississippi, on which is operated what is known as the North Hills Shopping Center, consisting of the retail drug store and lunch counter, beauty salon, grocery store, bakery and other businesses.

The lease-contract provided that the appellant was to construct and complete the drug store and lunch counter building according to plans and specifications agreed upon, and the term of the lease was to begin upon such completion. This segment of the building for the occupancy of the drug store and lunch counter was especially designed and constructed, and was to be occupied and used by the lessee with a rental of 4% of the gross annual sales, and with a specified minimum of guaranteed rental in the sum of $5,880 per annum.

The cause came on for hearing before the chancellor at Jackson, Mississippi, to dissolve the temporary injunction and on demurrer. After a full hearing on the matter, the demurrer was sustained and the temporary injunction dissolved. Thereupon, the appellant's bill of complaint was dismissed since the appellant had declined to plead further, upon the injunction being dissolved and the bill being dismissed. The appellant then request-

ed an appeal with supersedeas, and after a hearing on this request, the supersedeas bond was fixed at the amount of $9,000. However, the appeal was finally taken without supersedeas, and presumably the guaranteed rent of $5,880 is being paid as the same becomes due.

The principal question before us for decision on this appeal is whether or not the complainant, as lessor, is entitled to require by mandatory injunction the lessee to continue the use and occupancy of the drug store and lunch counter segment of the shopping center and continue to operate such businesses therein for a period of ten years from the date of the lease. The appellant relies on the following provisions of the lease-contract:

"3. Said building shall be occupied and used by Lessee as a retail drug store and lunch counter, and as rental for said store building Lessee shall pay to Lessor for each year an amount equal to four percent (4%) of the gross annual sales made from said premises, with the exception of sales of tobacco and sales to doctors which shall be two per cent (2%) of such gross sales, with a minimum guaranteed annual rental to be paid by Lessee to Lessor in the amount of Fifty Eight Hundred and Eighty Dollars for the premises covered by the building hereby leased regardless of the amount of said gross sales, to be divided into monthly payments and to be paid in equal monthly installments by Lessee to Lessor, in advance, on or before the first day of each and every month during the term of this lease. As promptly as possible after the end of the month of January of each year, Lessee shall cause to be prepared, signed by an officer of the corporation, and delivered to the Lessor a statement of its gross sales from said premises during the preceding twelve (12) month period, and in the event the percent of the gross sales during such twelve (12) month period as heretofore set forth shall exceed the monthly rental paid hereunder, then Lessee shall promptly pay to Lessor the difference be-

tween the total of the monthly rentals paid during said period and the percent of the gross sales during said period as heretofore set forth. * * *''

The appellant's position is that it is not relying upon an implied covenant but upon the so-called express covenant contained in the foregoing quotation from the lease. The question is presented as to whether or not the provision that the ''Said building shall be occupied and used by Lessee as a retail drug store and lunch counter'' grants merely the permissive right to so use the premises, and is intended to prevent the use of the premises for any other purpose. The appellee contends that the foregoing quoted provision of the lease is intended to restrict the lessee to the operation of this particular type of business, and that the same cannot be construed as a covenant that the lessee will, under any and all circumstances, continue to operate a drug store and lunch counter in these premises.

The general rule, as set forth in annotation in 46 A. L. R., p. 1134, is as follows: ''Apart from the question of liability for waste, it seems that the tenant is under no obligation, in the absence of specific provision therefor, to occupy or use, or continue to use, the leased premises, even though one of the parties, or both, expected and intended that they would be used for the particular purpose to which they seemed to be adapted or constructed.''

In the case of Sims v. Vanmeter Lumber Co., 96 Miss. 449, 51 So. 459, where the complainant sought specific performance of a contract requiring the defendant to operate a tramroad for the purpose of carrying logs, the lower court granted an injunction in that behalf, but this Court reversed and dissolved the injunction, stating, among other grounds assigned, the following: ''A court of equity will not direct the specific performance of a contract, where it would require the constant superintendence of the court from day to day

for an indefinite time, in order to enforce the carrying out of its decree.''

Again in Jones v. Mississippi Farms Co., 116 Miss. 295, 76 So. 880, among other things, this Court said the following: ''On the proposition of compelling the operation for three years in the supplemental contract, our own court has held, in *Sims* v. *Vanmeter Lumber Co.*, 96 Miss. 449, 51 So. 459, that equity will not direct a specific performance of a contract where it would require constant superintendence of the court from day to day for an indefinite time in order to enforce the carrying out of its decrees. This case refused specific performance of a contract for the construction of a logging road. See, also, *Bomer, et al.* v. *Canady,* 79 Miss. 222, 30 So. 638, 55 L. R. A. 328, 80 Am. St. Rep. 593.''

In the case of Blue Ribbon Creamery v. Monk, et al., 168 Miss. 130, 147 So. 329, the trial court construed the contract and ordered specific performance by injunction against the breach thereof, but this Court held that ''since to decree specific performance would require the constant superintendence of the court for a period of years in order to enforce the carrying out of its decree'', that such a decree would run counter to the doctrine announced in the case of Sims v. Vanmeter Lumber Co., supra, and it declined to affirm.

In the instant case, they would have a situation where the Security Builders, Inc. in Jackson, Hinds County, Mississippi, would be requiring the Southwest Drug Co., Inc. in Meridian, Lauderdale County, Mississippi, to continue the operation of a business which would have to be operated under the superintendence of the Chancery Court sitting in Hinds County, Mississippi, which would be contrary to the settled principles, as announced in our previous decisions on the question of compelling the specific performance of a contract by mandatory injunction.

When we look to the decisions of the courts of other jurisdictions, we find that the rule announced in our decisions is in line with theirs. For instance, in the case of Cousins Investment Company v. Hastings Clothing Company, 45 Cal. App. 2d 141, 113 P. 2d 878, a case involving a lease-contract computed on a percentage rental of the annual sales, and with a stated minimum rental per annum, the Court said: "* * * it is manifest that if it had been the intention of the parties to require defendant to operate its business in the demised premises for the balance of the term of the lease, such an intention, in a skillfully drawn agreement such as we have here, could and would have been expressed by a plain covenant to that effect. Therefore, the fact that under the circumstances stated there is an absence of such an express covenant clearly demonstrates that it was intentionally omitted; and that being so, under the legal principles above stated, it cannot be judicially inserted by implication."

In the case of Price v. Herman, 81 N.Y.S. 2d 361, the defendant had entered into a ten-year lease of said premises, which lease provided: "The tenant expressly covenants and agrees that for the term of the lease he will not remove the Bakery Business from the demised premises, and that the landlord, may, in addition to the other remedies afforded him by law, enjoin a removal of the Baking Business from the premises. Upon the termination of the lease the ovens now in or hereafter installed in the premises, shall remain the property of the landlord." The Court held: "That the defendant has broken his agreement is not denied. However, the Court is not convinced that the case is one for an injunction or a decree of specific performance. 'Contracts which require the performance of varied and continuous acts, or the exercise of special skill, taste, and judgment, will not, as a general rule, be enforced by courts of equity, because the execution of the decree would re-

quire such constant superintendence as to make judicial control a matter of extreme difficulty.' Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y. 60, at page 66, 51 N. E. 408, at page 409, 43 L. R. A. 854, 68 Am. St. Rep. 749.''

The reasoning behind the foregoing rule is set forth in 49 Am. Jur., Specific Performance, Sec. 70, as follows: ''As a general rule, courts of equity refuse to decree the specific performance of a contract where its provisions and stipulations are so multifarious and its obligations are so continuous as to make the effective enforcement of a decree impossible, or require constant and long-continued supervision by the court and further supplemental proceedings in order to enforce the defendant's compliance with the decree and his performance of the constantly recurring duties of the contract. This is particularly true where performance will extend over a considerable period of time and include a series of acts, as is the case of a building and construction contract. * * *''

It is true that the modern shopping center has come into being within the last decade in this country, and, because of the provision as contained in the lease now before us results in each of the tenants having the exclusive right to engage in his particular line of business, that is to say, without competition with any other tenant, and the success of each business depends upon the ''drawing power'' of each of the other places of business; and even though there is therefore a dearth of decisions on the precise point here involved, the principle nevertheless seems to be well-settled in our own State as well as other jurisdictions that specific performance of a provision in a lease-contract for the continued occupancy and use of the premises by the lessee for a specified purpose, and for a definite period of time, will not be ordered where the continued operation of the business of the lessee would require the sup-

erintendence of the court from time to time during the period of such lease.

■■ We therefore conclude that the appellant was not entitled to the relief prayed for, and that the decree of the Chancery Court of Hinds County herein appealed from should be, and the same is, hereby affirmed.

Affirmed.

*Kyle, Ethridge, Gillespie and McElroy, JJ.,* concur.

ON MOTION OF APPELLEE TO HAVE JUDGMENT AMENDED SO AS TO REMAND CAUSE TO LOWER COURT FOR ASSESSMENT OF DAMAGES.

McGehee, C. J.

In this cause there was filed on January 22, 1963, a petition to have the judgment which was entered on December 10, 1962, amended so as to remand the cause to the Chancery Court of Hinds County for the assessment of damages. We shall treat the same as a motion to correct judgment, the time having long since passed for the filing of a suggestion of error, and the petition being more in the nature of a motion to correct judgment.

No motion was made in the trial court for the assessment of damages when the motion to dissolve the temporary injunction on demurrer was sustained.

Under Section 462 of Griffith's Mississippi Chancery Practice, 2d Ed., under the caption ''Suggestion of Damages Required in Writing in Cases Not Covered by the Statutory Damages'', it is provided'' * * * that upon dissolution of an injunction the damages may be ascertained by the court or chancellor, and that thereupon the same may be assessed and decreed to the party entitled thereto, * * *. In order however that the party entitled thereto may have his said damages ascertained and decreed by the Chancellor or the chancery court, he shall suggest in writing, on the hearing of the motion

to dissolve the injunction, the nature and amount of the damages; and when so done the court or chancellor shall hear evidence, if necessary, either by witnesses examined before him in vacation or in term time, * * *.'' No evidence was offered by the appellee as to any amount of damages that he had sustained or to which he was entitled upon the dissolution of the injunction on demurrer and the final dismissal of the case, when the appellant declined to plead further.

Under Section 463, Griffith's Mississippi Chancery Practice, 2d Ed., it is provided under the caption ''Damages May Be Recovered in a Separate Action,'' that ''The written suggestion above mentioned is an essential to the allowance of damages by the chancellor. It is designed to take the place of, or serve informally as, a pleading with respect to the damages demanded; * * *.''

We are therefore of the opinion that the motion to have the judgment heretofore entered in this cause amended so as to remand the case to the chancery court for the assessment of damages should be and the same is hereby overruled without prejudice.

Motion overruled.

*Kyle, Ethridge, Gillespie, and McElroy, JJ., concur.*