349 So.2d 513 (1977)
NATIONAL OLD LINE INSURANCE COMPANY and Waynesboro Savings & Loan Association
v.
Albert Tucker BROWNLEE.
No. 49438.
Supreme Court of Mississippi.
August 24, 1977.
*514 William Vol Jones, Jr., Waynesboro, for appellants.
Maxey, Clark & Casey, Lunsford Casey, Laurel, for appellee.
En banc.
LEE, Justice, for the Court:
Albert Tucker Brownlee obtained judgment in the Chancery Court of Wayne County against National Old Line Insurance Company for monthly mortgage payments provided under a mortgage disability insurance policy and for specific performance requiring payment of said installments subsequent to February 1, 1976; he sought and was denied attorneys' fees; National Old Line Insurance Company appeals; and Brownlee cross-appeals.
On December 12, 1966, appellant issued to Brownlee an insurance policy providing for payments to Waynesboro Savings and Loan Association the sum of ninety dollars ($90.00) per month (mortgage payments) in the event of disability to him from sickness or injury as defined in the policy. The instrument also contained an elimination endorsement as follows: "With respect to ALBERT TUCKER BROWNLEE, the policy does not cover any loss caused by and resulting from: NEOPLASM AND/OR INGUINAL HERNIA." Appellee became disabled March 17, 1972, from a cancerous growth in his bladder. The bladder was removed and a drainage tube was inserted in his side. Appellee claimed disability mortgage payments under the policy which was rejected by appellant as being within the definition of "neoplasm." Brownlee then filed suit in the chancery court praying judgment for accrued monthly insurance payments and seeking specific performance of subsequent payments within the policy period [sixty (60) months].
Appellant contends (1) that the trial court erred in holding that the word "neoplasm" was so general it did not apply to appellee's illness.
Appellant's own medical expert testified that the term "neoplasm" covered a multitude of sins, that it could be a common wart or common mole, and that, if a person were sent to him to be treated for neoplasm, he would not know how or for what to treat him. None of the physicians' reports during treatment and following discharge referred to appellee's condition as neoplasm, and a second doctor testified that the word "neoplasm" by itself is "very vague."
The Superior Court of Pennsylvania in Smith v. State Mutual Benefit Society, 161 Pa.Super. 476, 55 A.2d 590 (1947), stated, "Neoplasm, medically speaking, is a tumor, malignant or not." 55 A.2d at 590. The Oxford Universal Dictionary, page 1320, defines the term as: "Neoplasm: (path.) A new formation of tissue in some part of the body; a tumour."
This Court has often set forth the principle that exceptions and limitations of coverage contained in a policy of insurance that are not clearly expressed will be construed more strictly against the insurer as the framer and fashioner of such provisions. Home Owners' Insurance Company v. Keith's Breeder Farms, Inc., 227 So.2d 293 (Miss. 1969).
In McLaurin v. Old South Life Insurance Co., 334 So.2d 361 (Miss. 1976), a hospital surgical insurance policy excepted the insured from any loss resulting from alcoholism. The insured was injured in an automobile collision occurring on the wrong side *515 of the highway. The hospital records indicated that he was on an alcoholic basis at that time, he suffered delirium tremens after his admission to the hospital and was given intravenous alcoholic injections. He took vodka and orange juice for twenty-five (25) days after the accident; blood tests subsequent to the accident indicated he was intoxicated to the extent that a charge of driving while under the influence of intoxicating liquor could be substantiated. The insurance company declined to make payment contending that his injuries resulted from alcoholism. In addressing that contention, this Court used the following reasoning and language pertinent to the present case:
"As to the particular insurance policy before us (if it were admitted that plaintiff was intoxicated when injured, which here is disputed), this Court declines to accept `alcoholism' as a synonym for `intoxication.' Ample precise language already subjected to judicial construction was available to the insurers in drafting their exception clause. Their decision to use the vague term `alcoholism' without supplying any definition has rendered the clause ambiguous and precipitated them into the midst of a medico-legal controversy. The ambiguity and doubt created thereby is resolved in favor of the insured. Home Owners Ins. Co. v. Keith's Breeder Farms, Inc., 227 So.2d 293 (Miss. 1969). The insurers' argument that the evidence conclusively proves, as a matter of law, that plaintiff's losses resulted from alcoholism is without merit on this record. Therefore, we cannot hold that the clause in the policy excepting losses resulting from undefined `alcoholism' entitled the insurers to a directed verdict." 334 So.2d at 363.
The chancellor in the present case found that the term "neoplasm" was general in nature and that the elimination endorsement was not effective to cover appellee's condition. We agree that the term is vague, ambiguous and general, and we cannot say that the chancellor was manifestly wrong in his findings.
Appellant contends next that the trial court erred (2) in overruling its demurrer to the bill of complaint, and (3) in decreeing specific performance.
The bill of complaint simply averred that appellee was disabled while the policy was in force and that appellant refused to pay the monthly mortgage installments under the terms of the policy after receiving proper notice of appellee's total disability resulting from sickness. The policy was made an exhibit to the bill of complaint. The bill prayed for damages in the amount of the mortgage payments made by appellee since his disability date, and that appellant be required to specifically perform the terms of the contract by paying monthly installments as they accrued in the future. The bill of complaint, with the insurance policy exhibited to it, failed to state a cause of action for specific performance. Also, subsequent to trial of the cause, the condition of appellee might have changed and he might not have been disabled from performing an occupation or employment for which he was reasonably qualified by education, training, or experience.
Atlantic Life Insurance Company v. Serio, 171 Miss. 726, 157 So. 474 (1934), involved an insurance policy similar to the one presented here. The insurance company declined to make payments. It was argued that this breach of contract entitled the insured to recover for future installments not due at the time of the suit. The Court stated:
"We cannot agree to this. There was no obligation on the appellant to make these monthly payments in advance, and the appellee could not sue therefor until the time for their payment passed without payment being made. The appellant's contention seems to be supported by Federal Life Ins. Co. v. Rascoe (C.C.A.[6]) 12 F.2d 693, but we decline to follow it, and agree with the opinion of the dissenting judge therein." 171 Miss. at 729-730, 157 So. at 475.
The demurrer should have been sustained, but since the trial court took jurisdiction of the cause and rendered relief, *516 part of which was correct, we will not reverse and render, or remand, as to that part of the relief properly granted. Miss.Const. § 147 (1890); Minter v. Hart, 208 So.2d 169 (Miss. 1968); Matthews v. Thompson, 231 Miss. 258, 95 So.2d 438 (1957).
Appellant last argues (4) that the trial court erred in holding that appellee was disabled.
Part II of the policy provides that (1) if the insured is wholly and continuously disabled and prevented from performing each and every duty pertaining to his occupation, the company will pay periodically the monthly indemnity stated in the schedule ($90.00 per month) for the period the insured is so disabled not to exceed twelve (12) consecutive months, and (2) after the payment of monthly indemnity for twelve (12) months as so provided, the company will continue the monthly indemnity so long as the insured is wholly and continuously disabled and prevented by reason of said injury or sickness from engaging in each and every occupation or employment for wage or profit for which he is reasonably qualified by education, training or experience, not to exceed the period stated in the schedule (sixty months).
The chancellor found that appellee is "disabled and has been continuously disabled since March 17, 1972."
Appellee was a heavy equipment worker employed by Masonite Corporation. After surgery, he was retired by physicians for Masonite Corporation, he was placed on total disability for Social Security payments and total disability for Veterans' Administration benefits. He testified in response to a question as to whether he had attempted to follow any other public employment since March of 1972, that "No, sir, I ain't able to do it."
The policy provisions stated above are similar to those considered by this Court in Prudence Life Insurance Co. v. Wooley, 254 Miss. 500, 182 So.2d 393 (1966). Wooley held that this "double-barrel provision" should have been submitted to the jury under proper instructions.
We interpret the chancellor's finding to mean that appellee was disabled from performing each and every duty pertaining to his occupation during the first twelve-month period and that, thereafter, he was wholly and continuously disabled and prevented by his sickness from engaging in each and every occupation or employment for wage or profit for which he is reasonably qualified by education, training or experience, and we are unable to say that the chancellor was manifestly wrong in so finding.
However, the chancellor was manifestly wrong in ordering monthly installments to be paid subsequent to February 1, 1976. Atlantic Life Insurance Company v. Serio, supra. The evidence presented at the trial on February 3, 1976, reflected, and the chancellor found, that the appellee was totally disabled within the terms of the policy from the time of his surgery up to the date of the trial. We hold, under the pleadings and facts of this case, the appellee is entitled to recover for forty-seven (47) monthly installments of ninety dollars ($90.00) each, extending over the period April 1, 1972, to February 1, 1976, together with interest at the rate of six percent (6%) per annum on said installments.
Appellee's cross-bill sought damages in the form of attorneys' fees and his evidence was to the effect that eighteen hundred dollars ($1,800.00) was a reasonable sum for such services. The trial court denied attorneys' fees or damages and appellee cross-appeals from that judgment. It is sufficient to say that the chancellor was eminently correct in declining to award damages or attorneys' fees to appellee.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART ON DIRECT APPEAL. AFFIRMED ON CROSS-APPEAL.
PATTERSON, C.J., SMITH and INZER, P. JJ., and ROBERTSON and BROOM, JJ., concur.
SUGG, WALKER and BOWLING, JJ., dissent.
*517 SUGG, Justice, concurring in part and dissenting in part:
I concur in part and dissent only to that portion of the opinion holding that specific performance will not lie in this case.
The opinion relies on Atlantic Life Insurance Company v. Serio, 171 Miss. 726, 157 So. 474 (1934). Serio is in conformity with a substantial number of cases which have adopted the view that upon breach of contract by an insurer to pay periodical indemnity or benefits, the right of action for damages is limited to the installments which have accrued prior to the judgment. Metropolitan Life Ins. Company v. Lambert, 157 Miss. 759, 128 So. 750 (1930); American National Insurance Company v. Briggs, 70 S.W.2d 491 (Tex.Civ.App. 1934). Like Serio, these cases usually involve actions which seek judgment for installments before they mature, or, to accelerate the maturity of future installments. The view of these cases that the right of action is limited to accrued installments are based on certain factors and considerations not present or at issue in this case.
First, an insurance contract providing for indemnity through future installment payments is not susceptible to an acceleration of future benefits or a single lump sum judgment. New York Life Insurance Company v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971 (1935). Such indemnity insurance contracts include, in addition to the principal promise to insure, separate and distinct promises to pay at specified times in the future upon proof of continued disability. Courts have denied lump sum installment judgments because there is no obligation on the insurer to pay in advance. Hines v. Fidelity Mutual Life Insurance Company, 6 F. Supp. 692 (1934); Allen v. National Life and Accident Insurance Company, 228 Mo. App. 450, 67 S.W.2d 534 (1934).
Serio was a suit in circuit court for payments then due and for those thereafter to become due. I agree that Serio is correct in that there was no obligation on the insurance company to make the monthly payments in advance, however, this is not the question in this case. Complainant has brought this action in chancery court to recover for future installments as they become due by way of specific performance. There is a vast difference in the two propositions. In the former, plaintiff seeks payment of benefits before they accrue and in the latter, the complainant seeks payment of subsequent installments as they accrue provided the disability continues and the insured survives.
This distinction was noted in Supreme Tent, K.M. v. Cox, 25 Tex.Civ.App. 366, 60 S.W. 971 (1901), where the court in holding that the trial court was in error in entering a judgment for an amount including installments not due at the date of the verdict, said:
This case is not in the nature of an action for specific performance of a contract nor one to enforce a lien either upon property or a specific fund, but to recover a debt some of which is not due. (25 Tex.Civ. App. at 371, 60 S.W. at 973).
Numerous courts have met the problem by requiring payment of benefits as they accrue. Olinski v. Milk Wagon Drivers' Union Local 753 International Brotherhood of Teamsters, Chauffeurs, Stablemen, and Helpers of America et al., 320 Ill. App. 487, 51 N.E.2d 709 (1943); John Hancock Mutual Life Ins. Company v. Bobo, 230 Ala. 650, 162 So. 287 (1935); Equitable Life Assurance Soc. v. Goble, 254 Ky. 614, 72 S.W.2d 35 (1934); Equitable Life Assurance Soc. v. Preston, 253 Ky. 459, 70 S.W.2d 18 (1934); Prudential Ins. Co. v. Bridgman, 256 Ky. 575, 76 S.W.2d 639 (1934); Melancon v. Provident Life & Accident Ins. Co., 176 La. 1055, 147 So. 346 (1933); Prudential Ins. Co. v. Hampton, 252 Ky. 145, 65 S.W.2d 980 (1933).
In Equitable Life Assurance Soc. v. Goble, supra, where the insurer breached its contract to pay monthly indemnity in case of total and permanent disability, the court affirmed a judgment ordering payment of past due installments and to pay future installments as they became due until the whole sum named in the policy should have been paid or until the plaintiff's permanent and total disability ceased, or until plaintiff's death. The court said:

*518 The effect of the judgment is merely to direct the payment of those that had matured under the terms of the group policy, and it is not in fact a judgment for the present recovery of the future installments. It is equivalent only to a declaration that such installments will be due at the dates fixed, and that it is the duty of the company to pay them as they mature, if the insured continues to live long enough to collect all of them or unless his disability ceases before their payment. It preserves the rights of the company, as agreed on between it and the insured, as set out in the policy, to avail itself of the provisions of its policy, subject to the supervision and the right of the court, on the application of the company or the insured, showing a change of the condition of the insured, to compel either or both parties to comply with his or its obligation in accordance with the policy, or in the event the company in the future fails or refuses to pay the future installments, by proper orders, require it to pay, or if the facts authorize it, excuse it from paying, the future monthly installments or any one or more of them. (254 Ky. at 620, 72 S.W.2d at 38).
The chancellor in this case has not adjudged the insurance company absolutely liable for future unaccrued installments, but has simply ordered that the insurance company comply with the contract by paying to the complainant disability payments monthly as they accrue upon proof of disability.
When the chancellor directed the insurance company to pay the future installments for disability as they accrue, he was exercising sound discretion. With an increase in the number of decisions favorably viewing specific performance in lieu of damages for breach of contract as a viable alternative to protect the rights and interests of policyholders as to future unaccrued installments without increasing the risk or liability of insurance companies it cannot be said that the chancellor committed manifest error.
There is no adequate remedy at law. If the complainant in this case has to sue as each monthly disability payment accrues and is not paid by the insurance company, he would be forced to file a suit every month for the remaining months covered by the policy. This would be the only remedy available and, in my opinion, is certainly not an adequate remedy at law. Complainant would be put to the expense of employing a lawyer and filing a suit each month which would, as a practical matter, deprive him of the benefits he is entitled to receive.
We are all aware that many insurance contracts are in force which provide for disability payments over a period of time. Such contracts are of fairly recent origin and the time has come for the equity courts to enforce such contracts by way of specific performance so as to obviate the necessity of an insured being required to file a separate suit on each disability payment as it accrues. By statute, decrees involving child custody, payment of alimony, child support and separate maintenance are subject to modification under changed conditions and circumstances. This is a statutory remedy, but the history of the development of equity jurisdiction convinces me that we should continue the development of equitable principles and fashion a rule whereby cases such as this could be disposed of at one hearing. If, in this particular case, the insured should regain his health or die before collecting all of the payments to which he is entitled we should permit modification on petition of the insurer when such changed circumstances or conditions arise. The time is now ripe for such a forward step because contracts of insurance for disability payments are common and equity demands that a swift and simple remedy be fashioned to determine controversies of such contracts.
I am aware of our cases which hold that equity will not decree specific performance of a contract where it would require the constant superintendence of the court from day to day for an indefinite term in order to enforce the decree. Security Builders, Inc. v. Southwest Drug Co., 244 Miss. 877, 147 So.2d 635, motion overruled 244 Miss. 877, *519 149 So.2d 319 (1962); Blue Ribbon Creamery v. Monk, 168 Miss. 130, 147 So. 329, suggestion of error overruled 168 Miss. 130, 147 So. 782 (1933); Jones v. Mississippi Farms Co., 116 Miss. 295, 76 So. 880 (1917); Sims v. Vanmeter Lumber Co., 96 Miss. 449, 51 So. 459 (1910).
A decree requiring specific performance in this case would not require constant supervision of the contract from day to day and month to month but would merely shift the burden of showing a change in circumstances from the insured to the insurer.
In my opinion, the Chancery Court of Wayne County had jurisdiction to render a decree for specific performance and exercised sound discretion by protecting the rights of both parties.
WALKER and BOWLING, JJ., join this dissent.