# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-IA-01536-SCT

*COPIAH MEDICAL ASSOCIATES*

*v.*

*MISSISSIPPI BAPTIST HEALTH SYSTEMS*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 09/14/2001 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RENEE C. HARRISON |
| | JAMES D. SHANNON |
| | ELISE BERRY MUNN |
| | KELLEY M. BERRY |
| | HOLMES S. ADAMS |
| | TODD INMAN WOODS |
| | DAVID A. RUEFF, JR. |
| | OLEN C. BRYANT, JR. |
| ATTORNEYS FOR APPELLEE: | MICHAEL B. WALLACE |
| | D. COLLIER GRAHAM |
| | ROBERT O. ALLEN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 04/14/2005 |
| MOTION FOR REHEARING FILED: | 06/01/2004 |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied.  The original opinion is withdrawn, and this opinion is substituted therefor.

¶2.    This case involves the question of whether the Copiah County Chancery Court or the Copiah County Circuit Court is the more appropriate forum to decide the underlying breach of contract claim.    We authorized this interlocutory appeal after the Specially-Appointed Chancellor, Honorable J. Larry Buffington, denied a motion to transfer this case to the Copiah County Circuit Court or, alternatively, to dismiss or stay the proceedings pending resolution of a previously filed action in the Copiah County Circuit Court.  *See* M.R.A.P. 5.  We find that the suit unquestionably sounds in contract law instead of equity and that the chancellor erred when he denied the motion to transfer.

## FACTS AND PROCEEDINGS

¶3.    Copiah Medical Associates ("Copiah") is a Mississippi general partnership consisting of practicing medical physicians operating in two Copiah County clinics, one in Hazlehurst and the other in Crystal Springs.    Mississippi Baptist Health Systems ("Baptist") is a Mississippi not-for-profit corporation engaged in the business of heath care.    Baptist controls a for-profit subsidiary, Health Care Economics, P.A. ("HCE") which manages medical practices and medical clinics.    (At times, Baptist and HCE will collectively be referred to as Baptist.) Copiah and Baptist entered into a non-binding Letter of Intent on December 8, 1998, which led to the execution of five additional documents on April 21, 1999.    These documents included: (1) a Management and Consulting Services Agreement ("Management Agreement"); (2) a Net Lease Agreement where Copiah would lease a proposed new Hazlehurst clinic from Baptist; (3) an Adoption Agreement, which activated specific provisions of the Letter of Intent where Baptist agreed to buy the land and pay the cost of construction of the new facilities; and (4) and

2

(5) two Net Leases where Copiah leased the two existing buildings in Hazlehurst and Crystal Springs from Baptist.

¶4. On July 17, 2000, HCE notified Copiah that a partial audit revealed evidence of overbilling of Medicare and Medicaid. Baptist asserted that it had attempted to persuade Copiah to cooperate in an audit to determine the extent of any overbilling. No audit occurred, and Baptist thus determined that Copiah was in breach of § 14 of the Management Agreement. As a result, on December 14, 2000, Baptist submitted to Copiah a letter terminating the Management Agreement effective December 31, 2000. On December 15, 2000, Copiah filed a breach of contract suit against Baptist and HCE in the Circuit Court of Copiah County. On January 26, 2001, Copiah moved to amend the Complaint to add counts of breach of good faith and fair dealing, breach of fiduciary duties, and requested punitive damages and attorneys' fees. The amendment also deleted the request for specific performance which was contained in the original complaint.

¶5. On February 2, 2001, Copiah notified Baptist and HCE that it repudiated the Net Leases on the basis that the leases were void because of Baptist's illegal termination of the Management Agreement. On February 6, 2001, Baptist then filed suit in the Chancery Court of Copiah County against Copiah seeking specific performance of the Net Lease regarding the new Hazlehurst facility.

¶6. Immediately thereafter, on February 14, 2001, Copiah moved to amend the circuit court complaint adding a declaratory action that the Net Lease was void. Copiah also moved to amend, changing the request for specific performance to a request for damages. After a

3

hearing on February 26, 2001, the circuit court granted Copiah's motion to amend and denied Baptist's motion to dismiss or, alternatively, to transfer the case to Copiah County Chancery Court.

¶7. Copiah moved the chancery court to transfer Baptist's lawsuit to circuit court on March 5, 2001. On March 19, 2001, Baptist filed an answer in the circuit court and counterclaimed for an accounting. Then, on March 22, 2001, Copiah again moved to amend the complaint in circuit court to add the lease claim and a breach of contract claim concerning the Management Agreement. On the same date, Baptist filed in the chancery court action its Opposition To Motion to Transfer [to Circuit Court]. Copiah filed its responsive pleading to the chancery court case on April 20, 2001, and asserted as a defense that Baptist's illegal termination of the Management Agreement voided the Net Lease and that, as a result, Copiah was discharged from its obligations. Baptist then filed an Answer and Affirmative Defenses in the circuit court case.

¶8. On May 2, 2001, Chancellor Buffington was appointed by this Court as Special Chancellor after Chancellor Edward Patten, Jr., for the Fifteenth Chancery Court District recused himself. On July 3, 2001, Baptist filed in the chancery court action a motion for judgment on the pleadings, seeking a permanent injunction requiring Copiah to occupy the new Hazlehurst clinic and liquidated damages at a rate of $513.25 per day since May 2, 2001, with costs and attorney's fees. The circuit court granted Copiah's motion for trial setting on July 16, 2001, scheduling trial for November 26, 2001.

4

¶9.     On August 30, 2001, Copiah filed in the chancery court an amended motion to transfer and a request for alternative relief including dismissal or stay pending resolution of the circuit court matter.   After an August 30, 2001 hearing, Special Chancellor Buffington subsequently entered an order denying all requested relief, and setting the case for trial on October 19, 2001.   Prior to the entry of the order, Copiah requested reconsideration.   The reconsideration was denied by order dated September 18, 2001.   These last two orders are at issue in this interlocutory appeal.

¶10.     Copiah states the issue on appeal as: "Whether, as a matter of law, the special chancellor erred when he denied the transfer of the parallel action to circuit court, or in the alternative, in not staying the chancery action until trial on the pending circuit court action." Copiah's argument is two-prong:   (1) that Baptist's claims in chancery court are compulsory counterclaims to Copiah's first-filed circuit court action, and (2) that the circuit court is the more appropriate forum to hear all claims. Claiming that Copiah "has approached the problem backwards," Baptist restates the issues as follows:

1.     Whether § 162 of the Constitution precludes transfer to circuit court of a complaint which, like Baptist's, states a claim within the jurisdiction of the chancery court.

2.     Whether the chancery court acquired priority jurisdiction over claims regarding the Net Lease which could not be divested by subsequent proceedings in circuit court.

3.     Whether Baptist's claim for specific performance of the Net Lease was a compulsory counterclaim in Copiah's circuit court action concerning the separate Management and Consulting Services Agreement, particularly where the Net Lease expressly provided that it would survive the termination of the latter agreement.

5

**DISCUSSION**

¶11. Jurisdiction is a question of law which this Court reviews de novo. ***Briggs & Stratton Corp. v. Smith***, 854 So.2d 1045, 1048 (¶ 9) (Miss. 2003). An order concerning a motion to transfer from chancery court to circuit court involves a question of jurisdiction and, therefore, is reviewed de novo. ***Id.*** at 1048 (¶ 9) (citing ***United States Fid. & Guar. Co. v. Estate of Francis***, 825 So.2d 38 (Miss. 2002)).

### I. Jurisdiction of Chancery Court

¶12. This Court must decide whether the chancery court is the more appropriate forum for the present action. The Mississippi Constitution of 1890, Article 6, § 159, limits the jurisdiction of chancery courts to the following areas: (a) all matters in equity; (b) divorce and alimony; (c) matters testamentary and of administration; (d) minor's business; (e) cases of idiocy, lunacy, and persons of unsound mind; and (f) all cases of which the said court had jurisdiction under the laws in force when the Constitution was put in operation. "All causes that may be brought in the chancery court whereof the circuit court has exclusive jurisdiction shall be transferred to the circuit court." ***Id.*** § 162.

¶13. In the case sub judice, Baptist filed its "Complaint For Specific Performance and Damages" in the chancery court. According to the complaint, the parties entered into a "Net Lease Agreement" and accompanying amendments whereby Baptist agreed to build a medical facility and Copiah agreed to lease the 12,500 square foot facility for fifteen years at a rental rate of $15.00 per gross square foot. Baptist further alleged that Copiah repudiated and

6

abandoned the lease. In Count I, Baptist sought an order of specific performance against Copiah. In Count II, Baptist sought compensatory damages.

¶14. Raised as an affirmative defense to the complaint, Copiah asserted that the chancery court case included the same issues arising from the same circumstances as alleged in the circuit court case. Eight days after Baptist filed the chancery court action, Copiah moved to amend its circuit court complaint to include a request for declaratory judgment that the Net Lease was void as a result of Baptist's breach of the Management Agreement. The circuit court granted that motion on March 1, 2001, and the amended complaint was filed on March 22, 2001.

¶15. Baptist asserts that the case should remain in chancery court because "only the equitable remedy of specific performance can make Baptist whole." Baptist relies on *Osborne v. Bullins*, 549 So.2d 1337, 1340 (Miss. 1989). However, *Osborne* involved a breach of a land sales contract, not a fifteen-year lease agreement. Moreover, we have also said:

> [T]he principle nevertheless seems to be well-settled in our own State as well as other jurisdictions that specific performance of a provision in a lease-contract for the continued occupancy and use of the premises by the lessee for a specified purpose, and for a definite period of time, will not be ordered where the continued operation of the business of the lessee would require the superintendence of the court from time to time during the period of such lease.

*Sec. Builders, Inc. v. Southwest Drug Co.*, 244 Miss. 877, 885-86,147 So.2d 635, 639 (1962).

¶16. We have consistently advised our trial courts that one must look at the substance, and not the form, of a claim to determine whether the claim is legal or equitable. *Trustmark Nat'l*

7

*Bank v. Johnson*, 865 So.2d 1148, 1152 (Miss. 2004); *Briggs & Stratton Corp. v. Smith*, 854 So.2d at 1049; *Tillotson v. Anders*, 551 So.2d 212, 214 (Miss. 1989); *Thompson v. First Miss. Nat'l Bank*, 427 So.2d 973, 976 (Miss. 1983); *Dixie Nat'l Life Ins. Co. v. Allison*, 372 So.2d 1081, 1085 (Miss. 1979). We have recently said:

> We have indicated that, if some doubt exists as to whether a complaint is legal or equitable in nature, that case is better tried in circuit court. *Southern Leisure [Homes, Inc. v. Hardin]*, 742 So.2d [1088,] 1090 [(Miss. 1999)]. In *McDonald's Corp. v. Robinson Indus., Inc.*, 592 So.2d 927, 934 (Miss. 1991), we stated that "[i]t is more appropriate for a circuit court to hear equity claims than it is for a chancery court to hear actions at law since circuit courts have general jurisdiction but chancery courts enjoy only limited jurisdiction."

*Burnette v. Hartford Underwriters Ins. Co.*, 770 So.2d 948, 952 (¶ 14) (Miss. 2000). This position was reiterated in *Burch v. Land Partners, L.P.*, 784 So.2d 925, 929 (¶ 13) (Miss. 2001), where we found that "[t]he circuit court is more adept to handle equity cases, rather than the chancery court to handle legal claims."

¶17. We find that this breach of contract claim should have been brought in circuit court rather than chancery court and that an interlocutory appeal was the proper procedure for resolving the jurisdictional issue.

## II. Compulsory Counterclaim

¶18. Copiah asserts that the claims brought by Baptist in chancery court are compulsory counterclaims to Copiah's previously filed circuit court action. Baptist contends that it could not have asserted its claim concerning the Net Lease in response to Copiah's original action because Copiah did not repudiate the agreement until February 2, 2001. Under M.R.C.P.

13(e), "[a] claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading." (emphasis added). Baptist further contends that the Management and Consulting Services Agreement and the Net Lease agreement are separate and distinct from each other.

¶19. Compulsory counterclaims are addressed under M.R.C.P. 13(a) as follows:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. But the pleader need not state the claim if:
>
> > (1) At the time the action was commenced the claim was the subject of another pending action; or
> >
> > (2) The opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim and the pleader is not stating any counterclaim under this Rule 13; or
> >
> > (3) The opposing party's claim is one which an insurer is defending.

The Comment to M.R.C.P. 13(a) states as follows:

> The purpose of Rule 13 is to grant the court broad discretion to allow claims to be joined in order to expedite the resolution of all the controversies between the parties in one suit and to eliminate the inordinate expense occasioned by circuity of action and multiple litigation:
>
> > It is, and should be, a paramount concern of the judiciary to prevent multiple suits where one suit will suffice. There is a tendency, perhaps, to forget that one who undergoes the rigors of an action, with all of its traumatic impact, loss of time, delay, substantial expense and disruption of his affairs, with consequent appeals and possible retrials and still other appeals, should be

9

spared having to do this more often than is strictly necessary. Even the successful party after bearing the expense of one trial and of one appeal is, in many instances, hardly a winner. *Magee v. Griffin*, 345 So.2d 1027, 1032 (Miss. 1977).

This Court has set up a four-prong test to determine the connection of the claim to the counterclaim:

> (1)      Whether the same evidence or witnesses are relevant to both claims;
> (2)      Whether the issues of law and fact in the counterclaim are largely the same as those in the plaintiff's claim;
> (3)      Whether, if the counterclaim were asserted in a later lawsuit, it would be barred by res judicata;
> (4)      Whether or not both claims are based on a "common nucleus of operative fact"?

*Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 804 So.2d 1000, 1004 (¶ 5) (Miss. 2001) (citing *Fulgham v. Snell*, 548 So.2d 1320, 1322-23 (Miss. 1989) (citing Robertson, *Joinder of Claims and Parties-- Rule 13, 14, 17, and 18,* 52 Miss. L.J. 47, 48-63 (1982))).  We have further stated:

> In applying the four-prong test stated in *Fulgham*, the logical relationship test is used to determine whether a claim and counterclaim arise from the same transaction or occurrence such that a counterclaim is compulsory; it exists when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant. *See American Bankers Ins. Co. v. Alexander*, 2001 WL 83952, [818] So.2d [1073] (Miss.2001).

*Reid ex rel. Reid v. Am. Premier Ins. Co.*,  814 So.2d 141, 146 (¶ 21) (Miss. 2002).

¶20.    Here, both the circuit and chancery court actions involve the same evidence and witnesses.   Although the Net Lease agreement is a separate contract from the Management Agreement, these documents are inextricably intertwined with one another.   For this reason,

the first, second, and fourth prongs of the test are met. Both the claims pending in the circuit and chancery courts arose from the lengthy negotiations resulting in the complex business arrangement between the parties.

¶21. Additionally, because the circuit court permitted the amendment to the complaint adding a declaratory action to determine that the Net Lease Agreement was void, the third prong of the test concerning res judicata is met as well.

> The requisites for application of the doctrine of res judicata are: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the cause of action; and (4) identity of the quality in the persons for and against whom the claim is made." *Standard Oil Co. v. Howell*, 360 So.2d 1200, 1202 (Miss.1978) (citing *Pray v. Hewitt*, 254 Miss. 20, 179 So.2d 842 (1965)). See also *Taylor v. Taylor*, 835 So.2d 60, 65 (Miss.2003); *Pro-Choice Miss. v. Fordice*, 716 So.2d 645, 655 (Miss.1998); *Little v. V & G Welding Supply, Inc.*, 704 So.2d 1336, 1338 (Miss.1997). Res judicata bars litigation in a second action "of all grounds for, or defenses to, recovery that were available to the parties regardless of whether they were asserted or determined in the prior proceeding." *Johnson v. Howell*, 592 So.2d 998, 1002 (Miss. 1991) (quoting *Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So.2d 749, 751 (Miss. 1982)).

*Dunn v. Dunn*, 853 So.2d 1150, 1155 (¶ 17 ) (Miss. 2003). Because both cases involve the alleged breach of the same lease agreement, the parties are identical, and each action seeks to determine the parties' contractual rights and responsibilities under the contract, the elements of res judicata are met. Although the cause of action was acquired after the filing of the circuit court case, Baptist had not yet filed its answer to that complaint. Baptist filed its first answer to the circuit court case over one month after initiating the chancery court case. Because the Net Lease Agreement at issue in this case arises from the same complex business arrangement

11

made by the parties, the claims asserted by Baptist in the chancery court action should have been submitted as a compulsory counterclaim in the circuit court action.

### III.     Priority Jurisdiction

¶22.    Copiah next asserts that the circuit court has priority jurisdiction because its first-filed complaint was amended to include a declaratory action that the Net Lease is void as a result of Baptist's breach of the Management Agreement and that the amendment "relates back" to the date of the original filing under M.R.C.P. 15(c). We agree.

> This Court has repeatedly stated that it is a "well established rule in this jurisdiction that where two (2) suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit." *Beggiani*, 519 So.2d at 1210. See *Hancock v. Farm Bureau Ins. Co.*, 403 So.2d 877 (Miss.1981); *Huffman v. Griffin*, 337 So.2d 715 (Miss.1976). In *Huffman*, 337 So.2d at 719, this Court also stated that "in this state priority of jurisdiction between courts of concurrent jurisdiction is determined by the date the initial pleading is filed, provided process issues in due course." See *Euclid-Mississippi v. Western Cas. & Sur. Co.*, 249 Miss. 547, 559-60, 163 So.2d 676 (1964); *Shackelford v. New York Underwriters Ins. Co.*, 189 Miss. 396, 407-08, 198 So. 31 (1940). "The court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit. *Huffman*, 337 So.2d at 719; see *Lee v. Lee*, 232 So.2d 370, 373 (Miss.1970), 20 Am.Jur.2d Courts § 128, at 481 (1965); 1 C.J.S. Abatement and Revival § 33, at 58-59 (1936); 21 C.J.S. Courts § 492, at 745 (1940). Further, it has been stated, in regard to the "priority of jurisdiction" rule that:
>
>> In order that the rule may be applicable which prevents interference by another court with the jurisdiction of the court first assuming it, the second action should be between the same

parties, seeking on the one hand, and opposing on the other, the same remedy, and should relate to the same questions.[1]

*Beggiani*, 519 So.2d at 1210 (emphasis added).

*Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.,* 804 So.2d at 1006 (¶ 15).

¶23.	As previously discussed, the matter pending in the chancery court is identical to the matter pending in the circuit court. The parties are exactly the same. The parties' rights and responsibilities under the Net Lease are at issue in both cases. Because the circuit court acquired jurisdiction over this matter through the first-filed complaint on December 15, 2000, the chancery court action should be transferred to the circuit court.

## CONCLUSION

¶24.	Based upon the foregoing reasons, we reverse the chancellor's denial of Copiah's motion to transfer, and we remand with instructions to transfer this case to the Copiah County Circuit Court.

¶25.	**REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., GRAVES AND DICKINSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

---

[1]This should not be confused with our recent declaration that the prior jurisdiction doctrine as it relates to annexation litigation was antiquated, thus enabling our chancellors to consolidate competing annexation petitions for one trial. *In re Enlargement and Extension of the Mun. Boundaries of the City of D'Iberville*, 867 So.2d 241, 251 (Miss. 2004).

13