United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 3, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Cause No. 04-60518,
cons. w/No. 04-60804

_____


RAPHAEL SKRMETTA,

Plaintiff-Appellant,

versus

BTN, INC.,

Defendant-Appellee.

---

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 1:02-CV-745-GRo

---

Before REAVLEY, JONES, and GARZA Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

This appeal concerns the interpretation of a lease for premises used as a parking lot for a Biloxi casino vessel. The district court ruled against the landlord. Except for the court's interpretation of the rent provision, we AFFIRM.

On October 19, 1993, Raphael Skrmetta ("Skrmetta"), as landlord, and Mississippi-I Gaming, L.P. ("Mississippi-I"), as predecessor in interest to BTN, Inc. ("BTN"), entered into a ninety-nine-year "Ground Lease" ("GL, § _") of certain premises,

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

specifying that they could be used for the purposes of, <u>inter</u> <u>alia</u>, operating a dockside gaming vessel, conducting gaming-related activities, and any other lawful activity or use.  <u>See</u> GL, § 5.1.

The Ground Lease also provides for variable rents: Annual Base Rent, <u>see</u> GL, § 3.1, Adjustment of Annual Base Rent, <u>see</u> GL, § 3.2, and Percentage Rent, <u>see</u> GL, § 3.4.  The Annual Base Rent was initially fixed at $500,000, subject to a cost-of-living adjustment every five years.  The Adjustment of Annual Base Rent and Percentage Rent are additional rents based on BTN's gaming profits, <u>i.e.</u>, its Adjusted Gaming Win[1] and Gross Gaming Win.[2] Under the Ground Lease, if the tenant's gaming profits fall below a certain amount during a specified lease term, it remits only the Annual Base Rent.  <u>See</u> GL, § 3.1.  If the tenant's gaming profits

---

[1]GL, § 1.1 defines "Adjusted Gaming Win" as:

. . . for the period in question, the positive difference, if any, derived from subtracting (i) all federal, state and local gaming taxes and fees related to Tenant's gaming operations <u>at the Premises</u> from (ii) the <u>Gross Gaming win</u>.

(emphasis added).

[2]GL, § 1.6 defines "Gross Gaming Win" as:

. . . for the period in question, the sum of (a) all cash received by Tenant as winnings from gaming transactions <u>at the Premises</u> (including gaming transactions occurring on any gaming vessel permanently moored <u>at the Premises</u> or which takes on passengers <u>at the Premises</u>). . . .  Gross Gaming Win shall not include (i) any revenues from the sale of . . . parking . . . .

(emphasis added).

exceed a certain amount during a specified lease term, it must remit the Annual Base Rent plus the Adjusted Gaming Win (minus the Gross Gaming Win and taxes and fees) and Percentage Rent. See GL, §§ 3.2, 3.4.

In August of 2000, Boomtown, Inc., parent company of Mississippi-I, assigned the Ground Lease to BTN. Skrmetta gave written consent to the assignment on the condition that "BTN . . . maintain the character of the Boomtown Biloxi Casino operations in substantially the same manner." To date, BTN operates a permanently moored casino vessel on the tidelands immediately fronting Skrmetta's premises and uses the premises for casino-related parking. BTN's recent annual rent payments to Skrmetta have averaged approximately $4,500,000.

In 2002, BTN publicly announced its intent to relocate its gaming operations to the Del-Seaway site, a parcel of land adjacent to the leased premises. BTN informed Skrmetta that it intended to continue its use of Skrmetta's premises for casino-related parking. BTN also informed Skrmetta that, after relocation, it would pay only the Annual Base Rent.

Skrmetta then filed a declaratory judgment action for relief including a declaration of the parties' rights and obligations under the Ground Lease. Reviewing competing motions, the district court entered summary judgment for BTN, finding that the Ground Lease does not prevent BTN from relocating its gaming operations to an adjacent lot, continuing to use Skrmetta's

3

premises for gaming-related parking, and remitting only Annual Base Rent as a result of its move.[3]  The court also concluded that the Ground Lease did not contain an implied covenant of continuous use under Mississippi law and that BTN's proposed actions would not breach the duty of good faith and fair dealing it owed to Skrmetta because its actions are consistent with its rights under the Ground Lease.  Skrmetta timely appealed.

This court reviews de novo a district court's summary judgment disposition, applying the same standards as the district court.  BP Oil Int'l., Ltd. v. Empresa Estatal Petoleos de Ecuador, 332 F.3d 333, 336 (5th Cir. 2003).

First, we agree with the district court that the Ground Lease does not contain, as Mississippi law does not permit, an implied covenant of continuous use that requires BTN to operate a casino at Skrmetta's premises.  See Senatobia Plaza Investors, Ltd. v. Wal-Mart Stores, Inc., 1995 WL 1945501, *3 (N.D. Miss. 1995) (stating that "[i]n Mississippi, there is no implied covenant of continuous use").  Further, GL, § 5.1, governing "Permitted Uses," is expressly permissive as to use.  See Kinchen v. Layton, 457 So. 2d 343, 345 (Miss. 1984) (holding that Mississippi law disfavors restrictive use covenants and "favors free and unobstructed use of real property").  Consequently, courts may not read a restrictive covenant into an open-use contract that does not contain an express

---

[3]The district court found that BTN owed Skrmetta adjusted base rent for the year preceding its relocation.

covenant of continuous use. See Security Builders, Inc. v. Southwest Drug Co., 147 So. 2d 635, 637 (Miss. 1962) (holding that in the absence of an express clause for continuous operation, a tenant is not obliged to continue to use leased premises in a particular manner, even where the executing parties contemplated and/or intended that the premises would be used for a specific purpose for the duration of the lease agreement).

Second, not only is BTN's proposed relocation within its rights under the Ground Lease, but it is also consistent with the duty of good faith and fair dealing that it owes to Skrmetta. See Gen. Motors Acceptance Corp. v. Baymon, 732 So. 2d 262, 269 (Miss. 1999) (holding that a party may act in its own economic interest without violating the duty of good faith and fair dealing). Relatedly, the written consent to assignment between Skrmetta and Mississippi-I, contemplating that BTN would use the premises in substantially the same manner as Mississippi-I, does not estop BTN from moving its vessel while using the premises only for parking. BTN's proposed use, gaming-related parking, is substantially the same as Mississippi-I's prior use, gaming-related parking. Because the parties agree that the written consent to assignment neither expands nor contracts their respective rights under the Ground Lease, there is no basis for estoppel. See Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp., 743 So. 2d 954, 964 (Miss. 1999) (finding that under Mississippi law, equitable estoppel arises when one party makes a representation and the other

5

party relies on that representation and changes its position based on that reliance).  In all these rulings, we agree with the district court.

Contrary to the trial court, however, we conclude that the issue of prospective rent, i.e., the type of rent due if BTN relocates its gaming vessel to the adjacent lot, is not amenable to summary judgment.  Under the Ground Lease, revenue-based rents are calculated from winnings generated by gaming operations that occur "at the premises."  See GL, §§ 1.1, 1.4, 1.6.  Thus, the type of rent BTN will owe Skrmetta turns on whether BTN's relocated vessel is considered to be "at the premises."  As it stands, BTN's proposed relocation to the adjacent Del-Seaway site would place the vessel within feet of its current location.  Post-relocation, customers may still pass across Skrmetta's premises to board and disembark the moored casino vessel, and the driveway entry to the casino vessel still passes through Skrmetta's property.  Whether BTN will owe revenue-based rent to Skrmetta post-relocation depends on whether "at the premises" means "contiguous to" or simply "very close to" the premises and whether "at the premises" is a term of limitation (i.e., a condition of payment) or a term of description (i.e., serving a utilitarian function in the Ground Lease but having no effect on the parties' rights as a matter of law thereunder).  Because interpretation of this term raises disputed issues, we REVERSE and REMAND to the trial court for determination by a fact-finder.

For the aforementioned reasons, the district court's judgment is **AFFIRMED IN PART and REVERSED IN PART and REMANDED IN PART.**

REAVLEY, Circuit Judge, dissenting.

I would affirm the judgment of the district court for the reasons given by its opinion dated March 15, 2004. This is a contract construction question and I see no factual ambiguity. I fail to understand what issue the majority would put to the fact finder. Will the fact finder be asked what "at the premises" means? And what evidence will contribute to the finding – that the lessor intended to get gaming percentages for 99 years, despite certain terms that permitted the lessee to use the land for any lawful purpose? Or may a witness – an expert perhaps – be permitted to testify that "at" means "near" and that the lessor would have to pay the owner of the adjacent land, if leased on the same terms, double gaming percentages because moored near both tracts means moored at both tracts?

I see nothing but a legal decision required. And that decision seems to me to be an easy one. Three precisely described parcels of land were leased and the base rent is to be raised only if gaming winnings are received by the lessee from operations on a gaming vessel moored at the premises. The lessee proposes to move the vessel and moor it at a different parcel of land. The lease is clear and unambiguous, and it allows the lessee to do that without paying more than the annual base rent.